[L. A. No. 17253. In Bank.—September 20, 1939.]

JOHN E. LIGHT, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

J. E. Light, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Founded upon several complaints which theretofore had been made against him to the respondent herein, J. E. Light, the petitioner, who was an attorney at law practicing his profession in the city of Los Angeles, was cited by an authorized local administrative committee of The State Bar of California to show cause why he should not be disciplined in punishment for the alleged commission of certain acts of professional misconduct which in said citation were specifically charged against him. By his answer thereto, petitioner denied, collectively and severally, each of the allegations that thus had been made, either evidentially or as ultimate facts, and which purportedly showed the asserted breach of his moral obligation as a lawyer either to the public in general or to The State Bar of California in particular. Following an extended hearing on the charges which thus had been preferred, the local administrative committee made its findings of fact in harmony with many of the essential facts which assertedly formed the basis of the charges which theretofore had been set forth within the several accusations against petitioner—in consequence of which the said committee made its recommendation to the board of governors of The State Bar that petitioner be disbarred from the further practice of law by him in this state. Thereafter, at a regular meeting of said board, by its formal resolution duly adopted to that effect, an identical recommendation with respect to petitioner was made to this court. At the instance of petitioner a writ of review of the proceedings which resulted from the filing of the charges hereinbefore referred to has been caused to issue by this court; and having been briefed and argued by the respective parties, the matter is now ready for determination.

The first reason that is presented by the petitioner as being sufficient in law to justify an annulment or cancelation of the recommendation is that ''petitioner had no notice, knowledge, or information of the findings and recommendation of the Committee hearing this matter''; and that

"petitioner had no notice, knowledge or information of the hearing before said Board of Governors on May 19, 1939, at which petitioner was adjudged and ordered to be disbarred".

In that connection, it will be noted that as to the asserted lack of notice of the "findings and recommendation of the Committee" petitioner makes no definite statement as to the exact date, if ever, when he was given notice, or when he received the same, or of the date when he acquired "knowledge or information of the [filing of the] findings and recommendation of the Committee". But, manifestly, the possible fact that the committee may have failed to give "notice" to petitioner, or that he had not received "knowledge or information", of the filing of such findings and recommendation—although perhaps somewhat irregular and possibly erroneous—could have no adverse effect on the legality of the *determination* by the said committee. However, the record of the proceedings affirmatively shows the mailing to petitioner of "a copy of the letter of transmittal [of such information] bearing date of mailing and the name of the person mailing the same", which record constitutes *"prima facie* evidence of the mailing thereof upon said date". (Rule 31, of Rules of Procedure of The State Bar of California.)

With reference to such asserted defects, as they might or did affect the subsequent and final hearing before the board of governors, it is clear that petitioner was entitled to reasonable advance notice of the date upon which the said board proposed or intended to consider the charges against him. But again, a certified copy of that part of the minutes of the meeting of the board of bar governors held in Los Angeles on May 19, 1939, which relate to the instant matter, includes the notation that "On April 24, 1939, a notice was sent to the respondent [petitioner] at his last known address as shown by the records of The State Bar, advising him that he would be permitted to be heard before the Board of Governors at 10:30 o'clock a. m., Friday, May 19, 1939, in Los Angeles. The respondent [petitioner] did not appear before the Board at the time set for his appearance nor otherwise communicate with the Board during its May meeting." Furthermore, it is not shown affirmatively that, had petitioner received timely notice of the date of such hearing, he would have appeared before said board either in person or represented by counsel; nor in his opening brief

filed herein .is it asserted or even suggested by petitioner that, had he been afforded an opportunity to be then and there present, he either could or would have presented any additional evidence which might have tended to show his innocence with respect to each or any of the charges of which theretofore he had been found guilty. In oral argument before this court petitioner declared, for the first time in this proceeding, that had he received timely notice of the date and place of the hearing before the board of governors, he could and would have produced pertinent evidence before said board relative to the charges which theretofore had been made against him. However, he failed to disclose either the name or names of any witness or witnesses that he proposed to call on his behalf, what the pertinent evidence was that such or any witness might have given—or how or in what manner any evidence, if given, would have been either material to, or could or would have related to, or in anywise affected, a determination of each or any of the said charges against him. Nor even at that late moment was petitioner's statement with regard to his ability to produce possible additional evidence supported either by his own affidavit, or by the affidavit of any person upon whom petitioner may have hoped or expected to rely in that connection. From aught that appears, it cannot conclusively be said that such purported evidence would have been admissible in any event. Neither is it anywhere shown that such evidence, even if received, would have been other than incidental to that which petitioner already had introduced; nor that such evidence might have resulted in a conclusion favorable to petitioner by either the committee or the board. In view of all those circumstances—assuming that as an established fact petitioner received no notice of the impending hearing—so far as now appears, obviously, it may not be said that his ultimate rights in the premises had been prejudicially affected.

In effect, petitioner also has complained that the evidence which was adduced against him was insufficient to support the findings which were made by the committee. However, it is to be noted that in the accusation, in substance, it was charged that in an action which some time theretofore had been pending in the Superior Court of Los Angeles County, entitled *Jennie E. Osborne* v. *Ralph G. Armiston*, No. 374,-214, petitioner knowingly filed a false affidavit of service of the complaint and summons therein; that the action was

one to quiet title, but was not brought in good faith; that at all times, petitioner ''well knew that the plaintiff in said action had no right or interest in or to the property concerning which he sought to quiet title''; that he filed a *lis pendens* for the purpose of clouding the title of the defendants in said action; that petitioner's purpose in so clouding the title to the property of the several defendants named in said action was to force all or some of said defendants to pay various sums of money by way of ''nuisance value'' to procure either quitclaim deeds or dismissals which would be necessary in order to remove the clouds on the titles to their respective properties; that if by chance one of said defendants learned of the pendency of said action petitioner would attempt to secure from such defendant as much money as possible in exchange for either a quitclaim deed or a dismissal; and that in the event any one of the defendants instituted an action to remove any such cloud on the title to his property and, under those circumstances, petitioner failed to exact any money from such defendant, petitioner would then dismiss the action as to that particular defendant.

As to those charges the evidence was sufficient to establish the facts that, although petitioner had served a copy of the complaint and summons on a person bearing a name somewhat similar to that of each of three of the defendants, as a matter of fact, in each instance, petitioner knew that the person whom he thus served with a copy of such papers was not one of the defendants in the action; that petitioner not only was a lawyer of many years' experience, but also, for a considerable length of time, had been an expert ''searcher'' or examiner of titles for a title company, and, therefore, that at the time when the complaint was filed petitioner well knew that the plaintiff in the action had no right or interest in the property involved therein; that the only ''paper'' title the plaintiff possessed arose from a so-called ''wild deed'', which petitioner knew had no foundation from a legal standpoint, and which conveyed no interest whatsoever to the plaintiff; that, in one instance, and with regard to one defendant, petitioner requested the former to pay him the sum of $25, either for a dismissal of the action in the defendant's favor, or for a quitclaim deed; that notwithstanding the fact that such sum was not paid, nevertheless, a disclaimer was filed by petitioner as to that

defendant. It also appeared in evidence that, after the action had been instituted, petitioner recommended its dismissal for the reason that he knew the plaintiff's interest in the property was based upon a ''wild deed''; that the action was not dismissed, however, but, as to some of the defendants named therein, was prosecuted to a default judgment; that each of several of the defendants was compelled to employ counsel to protect his rights, and that through the efforts of the respective counsel each defendant had obtained a quitclaim deed from petitioner. In such circumstances, petitioner asserts that his conduct was commendable. To the contrary, however, the evidence establishes the conclusion that petitioner well knew the action which he had instituted was wholly without merit and could not be sustained—hence his apparent willingness, at the instance of any of the defendants, either to dismiss the action in favor of such defendant, or to give him a quitclaim deed. Even if petitioner had believed in the justice of his cause—that is to say, that the plaintiff was the legal owner of the property—in that regard his conduct, if not reprehensible, at least would have invited and been deserving of adverse criticism.

What may be designated as the second cause of complaint, in many respects, presented a situation similar to that which hereinbefore has been set forth. From the evidence relating thereto there is justification for the conclusion of the committee that petitioner initiated the filing of an action which he well knew was lacking in substantial merit. In that regard, at the outset it appears that petitioner approached a Mr. Simon and represented to him that for the sum of $250 and a note, or notes, totaling the sum of $2,700, to be given to petitioner by Mr. Simon, petitioner could procure deeds to certain properties, which when procured would be used as a basis for the bringing of a quiet title action in the name of Mr. Simon, as plaintiff, against a large number of defendants, and that any profit which might accrue from the transaction would be divided equally between petitioner and Mr. Simon. Thereafter deeds were obtained to more than 600 pieces of real property, and petitioner began to check the records in Los Angeles County to ascertain the description of all property in which the grantor of the deeds, and his associates, might have had a record interest. Petitioner also investigated the said records as far back as the year 1923, even though he knew that the said grantor had

gone into bankruptcy in 1930 or 1931, and that in consequence thereof at that time the trustee in bankruptcy had deeded to a third person all property in which the grantor might have had an interest. Thereafter, as attorney for the plaintiff Simon, petitioner caused a quiet title action to be filed, and incidental thereto he also filed a *"lis pendens"*, which clouded the title to the property of many of the respective defendants in the action. Prior to filing the said action, petitioner, who theretofore had had office accommodations jointly with the grantor of such deeds, had removed his law office from that of the said grantor, for the reason that, as petitioner testified, he knew that the said grantor was wholly unreliable and dishonest, and for the further reason that petitioner was becoming "scared a little" because of the nature of the work he was doing for the grantor. At the time said action was instituted, petitioner knew or had reason to believe that neither the grantor nor any of his associates had any right, title or interest in, or claim to, or lien upon, any of the said 600 lots. At the time of initiating the transaction with Mr. Simon, petitioner had called Mr. Simon's attention to the fact that there might and probably would be some lots which were described in the complaint to which Mr. Simon would not have title, and that it therefore might or would be necessary to give some quitclaim deeds. Nevertheless, in the complaint that petitioner had prepared he alleged on behalf of the plaintiff Simon that said plaintiff was the owner in fee of all the property described in the complaint. At that time petitioner knew that plaintiff Simon was not the owner in fee of any of the property therein mentioned; and the fact appears that, at the instance of petitioner, the superior court entered judgment against two defaulting defendants wherein it was adjudged that the plaintiff was the owner in fee of all the property described in the complaint. Also, according to petitioner's statement he did not know what parcels of property in Los Angeles County had been conveyed to plaintiff Simon, and in order to ascertain the description of such property petitioner thoroughly checked the records in the office of the county recorder of Los Angeles County. It appears, however, that at no time during the entire hearing was any attempt made by petitioner to show that the plaintiffs—whom he had represented in the quiet title actions which involved hundreds of separate parcels of land—were the legal owners of such parcels,

or any of them, or that they or any of the plaintiffs had any genuine interest in any of the said lands. No testimony of any kind was introduced to show that any plaintiff represented by petitioner was the actual owner of, or had any genuine interest in, even one parcel of the property involved in the quiet title actions. Furthermore, petitioner admitted that he knew and had advised his client, Mr. Simon, prior to the filing of one of the actions (*Simon* v. *Metropolitan Trust Company*), that in all probability it would be necessary to give quitclaim deeds to some of the property described in the complaint for the reason that plaintiff Simon did not have title thereto.

It is apparent that petitioner utterly ignored the rights of property owners and filed sham actions to quiet title, therein describing parcels of land, owned by others, in disregard of the expense and burden which the respective property owners might be called upon to bear in order to clear the title to their respective properties—for evidently a quitclaim deed was given only in instances wherein the respective property owners employed counsel to protect their interests, or where they threatened to institute criminal proceedings against petitioner, and then, and only then, were they given a quitclaim deed.

However, as to each of the two causes of complaint above referred to, it also should be noted that the findings of fact which were made by the local administrative committee represented conclusions which, in some respects, were reached on conflicting evidence. Notwithstanding the general rule that on review of proceedings of the nature of those here involved, findings of fact which have been made by such a committee are not considered binding on this court (*Furman* v. *State Bar*, 12 Cal. (2d) 212 [83 Pac. (2d) 12]; *Fish* v. *State Bar*, 214 Cal. 215 [4 Pac. (2d) 937]; *Herrscher* v. *State Bar*, 4 Cal. (2d) 399 [49 Pac. (2d) 832]), the burden is on the petitioner to show wherein the decision of the board of governors of The State Bar is erroneous or unlawful (*Aydelotte* v. *State Bar of California*, 209 Cal. 737 [209 Pac. 41]; *Ring* v. *State Bar*, 218 Cal. 747, 751 [24 Pac. (2d) 821]; State Bar Act, sec. 26, Stats. 1927, p. 38); and, as the court said in the case entitled *Herrscher* v. *State Bar*, 4 Cal. (2d) 399, 401 [49 Pac. (2d) 832], in these proceedings, "the Board of Governors acts as an administrative arm

of this court and the court will approve or disapprove the Board's findings, depending upon the court's opinion as to the weight of the evidence", so that, when, on a review thereof, the findings are found to be supported by unquestionable and substantial evidence, they should be entitled to great weight. As was said in *Furman* v. *State Bar*, 12 Cal. (2d) 212 [83 Pac. (2d) 12], (syllabus): " . . . such findings, and the conclusion upon which the recommendation of said board is based, should be accorded persuasive force by said [this] court, even though some of the evidence is impeached, if the remainder of the entire evidence be either legally sufficient in itself, or be sufficiently corroborative of that which is under suspicion."

In the instant matter, although petitioner denied the truth of much of the evidence which was adduced against him, nevertheless, the apparently unimpeachable character of the evidence which was given in support of the findings in question may neither be denied, nor seriously questioned. In such circumstances, considering the comparatively broad opportunity which the committee had for arriving at the truth, this court is constrained to adopt the essential findings of fact which were made by the committee, rather than to depart therefrom and rely upon petitioner's uncorroborated testimony to the contrary. As a practitioner of long standing at the bar of Los Angeles County, his testimony was entitled to receive, and undoubtedly did receive, more than ordinary consideration; but, apparently, to the collective mind of the committee, the physical facts and other indisputable evidence presented at the hearing were sufficient to overbalance the evidence that was proffered by and received in behalf of petitioner. ▮ The fact that each of several of the allegations that were contained in the charges which were made against petitioner was not supported by the evidence and, consequently, was found by the local administrative committee to be untrue—although perhaps redounding to the credit of petitioner generally—does not suffice to absolve him from the charges in their entirety, in the light of other essential facts which were found to be true, as hereinbefore set forth. In other words, in order that the charge of professional misconduct may be sustained, it is unnecessary that *all* the allegations which were contained in the several charges against petitioner should have been

338

found to be true. To the contrary, if the combined facts as found by both the committee and the board were supported by substantial evidence, and amounted to a violation of petitioner's duty as an attorney at law, this court is warranted in sustaining the recommendation of the board of governors to the effect that petitioner be disbarred. No serious claim is made by petitioner that the facts, as found, do not constitute sufficient grounds for his disbarment.

 It is with regret that this court feels impelled to accept as true the several conclusions which are represented by the respective findings of fact which were made by the local administrative committee. They lead but to the one conclusion, to wit: That petitioner has grievously erred in his professional conduct and for that reason no longer is entitled to practice law within this state. However, the purpose of disbarment proceedings is not to punish the individual, but to determine whether the attorney should continue in that capacity. (*Dudney* v. *State Bar,* 8 Cal. (2d) 555 [66 Pac. (2d) 1199]; *Marsh* v. *State Bar,* 2 Cal. (2d) 75 [39 Pac. (2d) 403].)

Accordingly, it is ordered that, in conformity with the recommendation made in said matter by the board of governors of The State Bar of California, petitioner be, and he is, disbarred.

Rehearing denied.