[L. A. No. 17328.   In Bank.—July 26, 1940.]

## LELAND G. STANFORD, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Bertrand L. Comparet for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Petition to review the findings and recommendation of the board of governors of The State Bar that petitioner be disbarred from the practice of law in this state.

Petitioner was employed as the attorney in a proceeding to probate the will of Edwin R. Stevens, deceased, by Jennie C. Stevens, the wife of the deceased, who was named in said will as the executrix thereof. Proceedings were duly had whereby said will was admitted to probate, and the executrix therein named was appointed and thereafter duly qualified as the executrix of said will. Some two months thereafter she resigned as executrix and nominated petitioner as the administrator of said estate, and thereafter petitioner was appointed administrator with the will annexed of the estate of said deceased. Petitioner qualified as such administrator and completed the administration of said estate. Prior to the completion of the administration of said estate, Jennie C. Stevens conveyed to petitioner all property owned by her, including the property to which she was entitled as the sole devisee under her husband's will, and while by the decree of distribution in said estate the whole thereof was distributed to said Jennie C. Stevens, petitioner retained possession and control thereof under the deed previously executed by Mrs. Stevens in his favor. Said property was conveyed to petitioner in trust "for the benefit of Jennie C. Stevens, and to pay said Jennie C. Stevens during her lifetime such portion of the income or of the income or principal as shall be necessary or expedient for the health, comfort and convenience of the said Jennie C. Stevens. . . . This trust shall end at the death of said Jennie C. Stevens and the principal thereof by the said trustee shall be distributed according to the terms of the will and testament of said Jennie C. Stevens as executed by said Jennie C. Stevens on the 21st day of November, 1935.''

Under this deed of trust petitioner took possession of all Jennie C. Stevens' property, including at least $10,800 thereof in cash, and used the same to pay the purchase price of a home for himself. This sum was taken by petitioner from the trust funds on the following dates: On July 18, 1936, the sum of $500; on July 25, 1936, the sum of $7,-458.80; and on May 27, 1937, the sum of $2,601.20; and, on the same day, the further sum of $240. To secure the payment of said sums, petitioner and his wife executed what petitioner termed a mortgage on the property, or at least the greater part thereof, purchased by him with said trust funds. No promissory note or other evidence of said indebtedness, except said ''mortgage'', was executed either by petitioner

or his wife, and it was expressly provided therein that neither petitioner nor his wife was personally liable for the payment of the money which the mortgage was given to secure. The purported mortgage provided for the payment of the monthly sum of $45 to Mrs. Stevens, which was interest on said sum of $10,800 at the annual rate of 5 per cent. The indebtedness was to run for the period of five years and at the option of the petitioner and his wife was to be extended for an additional five years. The instrument and the certificate of acknowledgment bore date of September 16, 1937, and they were not recorded until April 21, 1939. It was delivered to Mrs. Stevens on May 2, 1939, a day or so after The State Bar began the investigation of petitioner's transactions with Mrs. Stevens. Mrs. Stevens was about 75 years of age at the time she employed petitioner to probate her husband's will. She had never known petitioner before that date, but was introduced to him by her friend Mrs. Edith Christy, who had known petitioner since 1906 or 1907, and who recommended petitioner to Mrs. Stevens. Mrs. Stevens at that time had had but slight experience in business matters and was unable unassisted to handle her own business affairs. Mrs. Christy was much younger than Mrs. Stevens and was the latter's intimate friend, to whom Mrs. Stevens went for counsel and advice. Mrs. Christy's business experience was also quite limited. As stated before, her acquaintance with petitioner was of long standing and unquestionably she had implicit confidence in him and it is just as certain that she inspired in Mrs. Stevens the same confidence in petitioner which she herself possessed.

While there are other acts charged against petitioner in the order to show cause issued by the administrative committee, those set forth above, wherein it is shown that he used trust funds in his possession to purchase himself a home, are the most serious in our opinion, and we shall therefore confine our discussion to and rest our decision of this case upon that transaction alone, for if the recommendation of disbarment cannot be sustained upon that transaction, then the other charges, which are of minor moment, would not be sufficient to justify this court in approving the recommendation of the board. On the other hand, if the recommendation of the board of governors can be sustained upon the case made against petitioner by the facts as hereinbefore

related, it will be unnecessary for us to consider the other charges set forth in the notice to show cause.

Petitioner makes no denial that he used the funds of the trust to purchase property for himself in the manner and to the extent set forth above. He claims, however, that it was done with the knowledge and express approval of Mrs. Stevens and was also known to her friend, Mrs. Christy, who also approved the transaction. He further claims that the whole scheme of deeding him the property in trust and the subsequent investment of the trust funds in property owned by him was for the purpose of protecting Mrs. Stevens' interest in her property and to secure for her a regular income therefrom sufficient to maintain her. He testified that Mrs. Stevens had relatives and friends who had designs upon her property and would unduly persuade her to convey it to them unless some means was devised to prevent such action on her part, and to that end and for the purpose of forestalling such event the trust was created, with the knowledge and approval of both Mrs. Stevens and her friend, Mrs. Christy; that after the trust was created Mrs. Stevens complained that the income from the trust property was only about $25 a month and was not sufficient for her needs; that she did not desire to encroach upon the principal and was anxious for an investment which would return to her a larger income, commensurate with her expenses, which ran about $45 a month. Petitioner therefore stated to her that he was about to purchase a new home and asked her if she would be willing to have him use the trust funds to purchase property for that purpose, she to accept a mortgage upon the property to secure the loan, with interest thereon at five per cent per annum. Both Mrs. Stevens and Mrs. Christy approved the suggestion and accordingly the property was purchased and the loan made according to the terms of his suggestion. Petitioner in his testimony before the committee strenuously contended, and his counsel now makes the same contention, that petitioner's sole object and purpose in entering into this transaction was in the interest of Mrs. Stevens and to preserve her property and provide for her a safe investment of the trust fund with an income therefrom adequate to her needs.

The findings of the administrative committee which heard the charges against petitioner, and as approved by the board of governors of The State Bar and certified to this court,

were adverse to petitioner on practically all matters in issue in said proceeding.

As to the acts of petitioner in having himself appointed trustee of the property of Mrs. Stevens and in investing the funds of said trust in the purchase of a home for himself, the committee found: "that all the acts committed by him were deliberate and carefully thought out by respondent [petitioner] to enrich himself at the expense of an aged, trusting client who had abiding faith in the uprightness of the respondent". There is not only ample evidence taken before the administrative committee to support this and the other findings of the committee, but in our opinion the great preponderance of that evidence justifies the committee's findings.

We think it hardly necessary to enter into an extended review of the evidence before us. Petitioner concedes all the essential elements of the charge against him. He admits that he was appointed trustee of this client's property upon his advice to her and without his client having any independent advice from any person capable of advising her. He admits that the funds came into his hands as trust funds under the trust indenture which his client signed under his advice. He admits that he used them in the purchase of property which was to and did become his individual property, or the property of himself and wife. He testified that Mrs. Stevens had agreed that he might use the trust funds for the purchase of said property upon his executing a mortgage covering the property purchased, yet he failed to take any steps toward giving her a mortgage or any security whatever until over a year after he had used the bulk of said funds, and for almost four months after he had used the entire amount thereof, and even then, if the so-called mortgage was executed on the day it bears date (September 16, 1937), it was not filed for record for over a year and a half after its date. He admits that the terms of this so-called mortgage are as stated above, that there was no assumption of liability by himself or wife of the indebtedness, but, on the other hand, there was an express provision therein that neither petitioner nor his wife should be personally liable for said indebtedness. He further admits that even after it was recorded he did not give the document to Mrs. Stevens until The State Bar had begun an investigation. Besides these admissions on his part, there are grave doubts whether this

so-called mortgage was really executed on the day it bears date. The notary before whom it was acknowledged was his secretary and her official record failed to show any acknowledgment of said document by petitioner on that day, or on any other day, and the administrative committee found that "the transaction is such as to lead the committee to believe that said acknowledgment on said mortgage was dated back by the secretary of respondent at the request of respondent".

There is also some doubt as to petitioner's intentions in respect to the recordation of said mortgage, and whether he intended to record it at all. It appears from the testimony of Mrs. Christy that Mrs. Stevens had a cousin visiting her and the subject of the recordation of said mortgage came up for discussion. As a result of this conversation, Mrs. Stevens and Mrs. Christy went to the office of the county recorder and found that no mortgage had been recorded. They then called upon petitioner, who stated he would have the mortgage recorded, which was done, and it was not until after this call at the recorder's office and the subsequent conversation with petitioner and his promise to record the mortgage that the mortgage was recorded.

It might be well to here state that petitioner's troubles had their beginning in the recordation of the mortgage. The evidence shows that some unknown person rang up Mr. Hewicker, the local member of the board of governors of The State Bar, called his attention to the mortgage as recorded, and suggested that he investigate the matter. Mr. Hewicker acted upon the suggestion and, after learning of the unusual conditions embodied in the document, had an investigator of The State Bar come to San Diego to look into the transaction between petitioner and Mrs. Stevens. As a result of that investigation, the proceedings against petitioner were instituted before the local administrative committee. We mention these matters, as it is contended that petitioner is being persecuted by persons unfriendly to him and that the proceedings before the administrative committee were instituted and prosecuted through ulterior and even improper motives. From the foregoing statements it appears that they were instituted as a result of the investigation carried on by those public officials having jurisdiction of these matters and that they have been prosecuted through the regular chan-

nels of the law. We see no occasion to criticize either the institution or the prosecution of these proceedings.

While claiming that he acted for the benefit and in the interest of his client, the transaction as a whole shows that he profited materially by the use of the trust funds, and that the beneficiary's interest was not properly protected. He secured a home, for which he paid $10,000, which he put up as security for the sum of $10,800. Not only did the amount of the loan exceed the purchase price of the property, but there was omitted from the security a portion of the property purchased, and while the omitted portion was not large in comparison with that which was included in the security, it was at least substantial. No person with a knowledge of the first principles of business would have approved such a transaction, even if there had been no trust relation between the parties. No lawyer of any standing would have advised a client of his to accept as security for a loan of money, the purported mortgage which petitioner gave to Mrs. Stevens. No lawyer with even a limited acquaintance with the law of trusts would have sanctioned the use by a client of his of trust funds in the manner in which petitioner used those belonging to the trust in favor of Mrs. Stevens. When we consider that petitioner was an experienced lawyer and familiar with business transactions; that he had given special study to the subject of trusts, he at the time being an instructor in trusts in a local law school; and that the transaction in question resulted to the advantage and profit of petitioner and to the disadvantage of and possibly in a loss to his client and beneficiary under the trust, we are forced to agree with the local administrative committee in the finding "that all the acts committed by him were deliberate and carefully thought out by respondent [petitioner] to enrich himself at the expense of an aged trusting client who had an abiding faith in the uprightness of the respondent".

■ These findings bring petitioner clearly within the provisions of subdivision 5 of section 287 of the Code of Civil Procedure (now section 6106 of the Business and Professions Code), which declares that the commission of any act involving moral turpitude constitutes a cause of disbarment or suspension. ■ While there may be some disagreement as to the precise definition of moral turpitude, the authorities generally agree that an act of an attorney

which is contrary to honesty and good morals is conduct involving moral turpitude. (*Matter of Humphrey,* 174 Cal. 290 [163 Pac. 60], *In re O'Connell,* 184 Cal. 584 [194 Pac. 1010], *Lantz* v. *State Bar,* 212 Cal. 213, 218 [298 Pac. 497], and *In re Hatch,* 10 Cal. (2d) 147 [73 Pac. (2d) 885].)

In the use of said trust funds in the manner and for the purpose set forth above, petitioner not only violated his obligations as a trustee, as these are defined and set forth in the statutes of this state (secs. 2229, 2231 and 2234, Civ. Code), but his conduct in that transaction cannot be squared with the rules of common honesty.

We do not consider it necessary to comment to any extent upon evidence offered in behalf of petitioner as to his reputation for honesty and integrity in the city of San Diego, the home of petitioner. Many of the most prominent men and women of the city, and the county of San Diego, testified to the good reputation of the petitioner in his home community. In the face of this evidence, the administrative committee, which was composed of attorneys residing in the very same community, found him guilty of the charges preferred against him. The record before us, to the salient portions of which we have given consideration in the foregoing pages of this opinion, convinces us that the findings of the committee are supported by overwhelming evidence, and we feel ourselves compelled to approve them, notwithstanding the testimony of the many reputable citizens of his home community, who have given evidence of his good reputation. Under these circumstances, conceding that those who testified as to petitioner's good reputation gave their evidence in his behalf in the utmost good faith and had the best interest of the public and of The State Bar at heart, we are unable to reconcile the conduct of petitioner, as recorded by the evidence in this case, with those principles of honest dealing which are so essential in one entrusted with the responsibilities of an attorney at law.

For the reasons hereinbefore set forth, the findings and recommendation of the board of governors are approved and it is hereby ordered that petitioner be and he is hereby disbarred from the practice of law in this state, this order to take effect thirty days after the date of the filing thereof.