THE COURT.
 

 On February 10, 1937, Ira S. Hatch, an attorney at law, was found guilty by the court sitting without a jury on 52 counts in two informations charging violations of the Corporate Securities Act in that he knowingly participated in the issuance and sale of securities without first having obtained a permit from the commissioner of corporations ; also that he engaged in the purchase of securities for the purpose of reselling them without first having obtained a broker’s license from the commissioner of corporations. The record of his convictions was filed with this court pursuant to the provisions of sections 287, 288, 289 and 299 of
 
 *149
 
 the Code of Civil Procedure. Under those sections an attorney who has been convicted of a felony or misdemeanor involving moral turpitude must be suspended upon the receipt by the court of the record of conviction, and when the judgment of conviction has become final he must be permanently disbarred.
 

 The question was raised whether the offenses of which Hatch was convicted were crimes involving moral turpitude. The matter is submitted on the record of conviction and the briefs filed on behalf of the attorney and The State Bar.
 

 Upon his own application to the trial court, Hatch, hereinafter referred to as the defendant, was granted probation. The order of the court was that the “proceedings herein be suspended and defendants placed on probation as follows: Defendant Hatch is placed on probation for a period of ton years under the following conditions: Defendant shall not engage in any investment business or handle the money of others. Defendant is ordered released forthwith”.
 

 The record in each of the two criminal proceedings against the defendant presents the numerous counts based upon the complaint of the persons therein named, the finding by the court of the guilt of the defendant on specified counts, and the orders of the court on the motions to dismiss certain other counts and on the application for probation. Under the sections of the Code of Civil Procedure above cited the offense or crime, whether a felony or a misdemeanor, must be one involving moral turpitude, otherwise the court is not called upon to carry out the requirements of the statute.
 

 The defendant contends that the violations of the Corporate Securities Act, of which he was convicted, constitute merely technical violations and do not indicate that they were committed with moral turpitude; that the act of issuing and selling securities without a permit is not inherently bad, but is merely
 
 malum prohibitum,
 
 inasmuch as prior to the adoption of the act the issuance and sale of securities
 
 without a permit
 
 did not involve any question of right or wrong in human conduct. The defendant therefore stresses the view that wherever suspension or disbarment pursuant to section 299 of the Code of Civil Procedure is concerned, moral turpitude must connote baseness, vileness or depravity, such as is inherently a part of murder and other crimes
 
 malum in se, .
 
 However, the courts of this state have
 
 *150
 
 rejected such a test as exclusive in determining whether an attorney has been guilty of conduct requiring disciplinary action or disbarment. Conduct involving moral turpitude has been defined as “everything done contrary to justice, honesty, modesty or good morals”.
 
 {Matter of Coffey,
 
 123 Cal. 522, 524 [56 Pac. 448];
 
 Lantz
 
 v.
 
 State Bar,
 
 212 Cal. 213, 218 [298 Pac. 497];
 
 Jacobs
 
 v.
 
 State Bar,
 
 219 Cal. 59, 64 [25 Pac. (2d) 401].) Therefore, if the offenses of which the defendant was convicted meet the test and involve moral turpitude, this court under the code sections must suspend him from the practice of the law in this state at least during the term of his probation.
 
 {In re Jacobsen,
 
 202 Cal. 289 [260 Pac. 294].)
 

 This court is not called upon to consider the question of the defendant’s guilt. Section 287, subdivision 1, Code of Civil Procedure, makes the record of conviction conclusive on that point.
 

 Conceivably not in every case of the conviction of violations of the Corporate Securities Act will the face of the record of conviction indicate conclusively whether the offense involved moral turpitude. No doubt attaches to the conviction of such crimes as murder, embezzlement, extortion and many others. But convictions of violations of police regulations, or of simple assault or battery, may indicate without further inquiry that moral turpitude was not involved.
 

 There is necessarily a field of doubtful eases where the determination as to whether moral turpitude was involved may fall on one or the other side of the line, depending upon the circumstances of the particular case. That certain violations of the Corporate Securities Act may fall into this class of doubtful cases is evident from the fact that in the criminal prosecution of a person so charged the question of good or bad faith is not necessarily an element for consideration.
 
 {El Claro Oil etc. Co.
 
 v.
 
 Daugherty,
 
 11 Cal. App. (2d) 274, 281 [53 Pac. (2d) 1128, 55 Pac. (2d) 488];
 
 People
 
 v. McCalla, 63 Cal. App. 783, 793-795 [220 Pac. 436].) The fact that the legislature has made the basis of conviction the bare act of knowingly authorizing or assisting in the issue or sale of securities without a permit, leaves for the determination of the court the question whether such act involved moral turpitude. This court would not be justified in holding that, because the circumstances of any one such case might indicate
 
 *151
 
 a. mere technical omission without the stigma of moral guilt, the entire class of offenses is one not involving moral turpitude. In some doubtful cases the record of conviction may not be sufficient upon which to base a determination one way or the other on the question of moral turpitude, and appropriate action by the court may require a reference to the Board of Governors of The State Bar for an inquiry and recommendation. The State Bar is not deprived of jurisdiction in disciplinary proceedings to inquire into the fitness of an attorney to practice when a record of his conviction is on file with the court under sections 287 et seq. of the Code of Civil Procedure.
 
 (Shafer
 
 v.
 
 State Bar,
 
 215 Cal. 706 [12 Pac. (2d) 957].)
 

 “The concept of moral turpitude depends upon the state of public morals, and may vary according to the community or the times.”
 
 (hi re Bartos,
 
 13 Fed. (2d) 138.) In
 
 Beck
 
 v. Stitzel, 21 Pa. 522, 524, citing among other cases,
 
 In re Coffey, supra,
 
 it was said: “This element of moral turpitude is necessarily adaptive; for it is defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community.” In the case of
 
 Rudolph
 
 v.
 
 United States,
 
 6 Fed. (2d) 487 [55 App. D. C. 362, 40 A. L. R. 1042], it was said: “We are not much concerned with the distinction sought to be made between crimes
 
 malum in se
 
 and those which are merely
 
 malum prohibitum.
 
 Many things which were not considered criminal in the past have, with the advancement of civilization, been declared such by statute, and the commission of the offense, if it involves the violation of a rule of public policy and morals is such an act as may involve moral turpitude”; and, “There is no hard and fast rule as to what constitutes moral turpitude. It cannot be measured by the nature or character of the offense unless, of course, it be an offense inherently criminal, the very commission of which implies a base and depraved nature. The circumstances attendant upon the commission of the offense usually furnish the best guide. ’ ’
 

 In sustaining legislation of the character of the Corporate Securities Act, it has been held that the general purpose and tenor of the act is to “protect the public against the imposition of unsubstantial schemes and the securities based upon them” and against “fraudulent or unlawful stock
 
 *152
 
 a,nd investment schemes and enterprises”.
 
 [Hall
 
 v.
 
 Geiger-Jones Co.,
 
 242 U. S. 539 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R A. 1917F, 514];
 
 In re Leach,
 
 215 Cal. 536, 543 [12 Pac. (2d) 3];
 
 Daugherty
 
 v.
 
 Riley,
 
 1 Cal. (2d) 298, 305 [34 Pac. (2d) 1005] ;
 
 Cecil B. De Mille Productions
 
 v.
 
 Woolery,
 
 61 Fed. (2d) 45.) It must necessarily follow that violations of the act are contrary to the concept of honesty and good morals where the intent is to evade its provisions with the object of gain or profit. Therefore the stigma of moral turpitude may attend the violation of the statutory requirement that a permit must be obtained from a body constituted to supervise the details and guard the interests of the public against impositions and frauds before the issuance or sale of securities. This stigma would seem to attach to the conviction of an attorney who, as charged and found guilty, “knowingly authorizes, directs or aids in the issue and sale of” securities contrary to the provisions of the act (Stats. 1931, p. 950, sec. 18), where the circumstances indicate that the omission was not merely technical but was done with the object and design of evading compliance with the act. (See, also,
 
 In re Diesen,
 
 173 Minn. 297 [215 N. W. 427, 217 N. W. 356].)
 

 The defendant claims that the failure to obtain the permit was in this ease merely a technical omission, for which he should not be disbarred or suspended from the practice of the law relying on
 
 In re Kling,
 
 44 Cal. App. 267 [186 Pac. 152], The fact of the record itself refutes the contention. Numerous persons to whom we may assume the securities were sold complained against the defendant. The defendant does not offer to show that his alleged “technical” omission was cured by a dilatory application for a permit, or that a permit was subsequently granted. On the contrary the plain indication from the two classes of charges is that the defendant’s purpose was to evade the necessity of a permit by purchasing the securities and reselling them as his personally-owned property. The trial court apparently concluded that the acts of the defendant were of such a serious and dishonest character that protection to society demanded that he should not, during the period of probation, engage in the investment business or handle the money of other persons. It would be anomalous to conclude that he should nevertheless be permitted to continue in the practice of the law during that
 
 *153
 
 period. The same reason for requiring that he be restrained from further engaging in the business of making investments for others or in handling the property of others is persuasive that the motive and intent with which he acted was such as to indicate turpitude in the commission of the offenses of which he was convicted. The record of conviction therefore is sufficient upon which to dispose of the proceedings herein finally without a reference to and investigation and recommendation by the Board of Governors of The State Bar as to whether the defendant’s acts involved moral turpitude.
 

 It is therefore ordered that the defendant be suspended from the practice of the law in this state for the period of his probation in the action herein referred to and until the further order of this court.