[No. C011258. Third Dist. Aug. 14, 1992.]

ROBERT L. PADILLA, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant;
CALIFORNIA HIGHWAY PATROL, Real Party in Interest and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Appellant and for Real Party in Interest and Appellant.

Sam A. McCall, Jr., and Julius M. Engel for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This is an appeal from a judgment granting a petition for writ of administrative mandamus commanding the State Personnel Board (Board) to set aside its decision upholding the termination of employment of Robert Padilla with the California Highway Patrol. Padilla entered a plea of nolo contendere to a misdemeanor violation of Penal Code section 242, imposition of sentence was suspended and he was placed on probation. The question is whether Padilla suffered "conviction of a misdemeanor involving moral turpitude," a ground of employee discipline under Government Code section 19572, subdivision (k).[1] The Board contends the trial court erred in measuring moral turpitude by the minimal elements of the misdemeanor offense. The Board contends that there is a "conviction" within the meaning of the disciplinary statute where a plea of nolo contendere is accepted and probation is granted with suspension of imposition of sentence. Padilla disputes both points. We will reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

Padilla has been a state employee since October 1, 1984. He was notified that he would be dismissed on July 23, 1990. At the time he was working as a motor carrier specialist, a position that requires him to inspect and certify commercial trucks and buses for safety. The sole cause for dismissal alleged is that provided in section 19572, subdivision (k). The Board sustained the dismissal in pertinent part as follows.

"The testimony of [Padilla's] 16 year old daughter established that [he], on two occasions in early 1986, fondled her breasts. The daughter reported the incidents to a school counselor in October 1989 and a criminal investigation was instituted by the local police. [Padilla's] supervisors were informed of the investigation in December 1989.

"On February 22, 1990, [Padilla] was charged with two felony counts of Penal Code Section 288 [, subdivision] (a), lewd and lascivious acts with a child under 14 years. As the result of a plea bargain on June 11, 1990, the charges were reduced to one misdemeanor count of Penal Code section 242, as amended. [Padilla] pled no contest to Count 2. His sentence was withheld for two years and [he] was denied contact with his daughter and required to attend counseling.

---

[1]Unspecified references to a section are to the Government Code. Section 19572, subdivision (k), provides that an employee may be disciplined for "[c]onviction of a felony or conviction of a misdemeanor involving moral turpitude. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony or any offense involving moral turpitude is deemed to be a conviction within the meaning of this section."

"Count 2, as amended read, 'On and between January 1, 1986 and February 28, 1986, in the above named Judicial District, the crime of Battery in violation of Penal Code Section 242, a misdemeanor, was committed by Larry Robert Padilla, who did willfully unlawfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of [his daughter], a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant(s) and said child.'

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"[Padilla's] conviction on June 11, 1990 was a conviction of a misdemeanor involving moral turpitude and constituted a cause for adverse action within the meaning of Government Code Section 19572(k)."

A memorandum of the plea bargain agreement, signed by Padilla, his counsel, the prosecutor, and the judge, shows he pled nolo contendere to one count of misdemeanor battery, "pronouncement of judgment" was "withheld" and conditional and revocable release was granted for a period of two years. The court imposed conditions that he have no contact with his daughter and that he attend specified counseling and provide proof of completion of that counseling to the district attorney and the court in the criminal proceeding.

The trial court overturned the decision of the Board on the following ground. "Because the plea of nolo contend[e]re to a violation of section 242 of the Penal Code, simple assault, does not involve a crime of moral turpitude (*People* v. *Castro* (1985) 38 C3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], *People* v. *Mansfield* (1988) 200 CA3d 82, 87 [245 Cal.Rptr. 800]), following these cases the court finds that in determining whether a previous felony involves moral turpitude, the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense but must instead go to the statute's definition of the particular crime and only to the least adjudicated elements of the crime." It therefore granted the writ of mandate commanding the Board to set aside its decision and to reinstate Padilla to his former position. This appeal followed.

DISCUSSION

I

The Board contends the trial court erred in applying *People* v. *Castro*, *supra*, to overturn its decision. We agree.

The question is one of statutory construction. The statutory phrase "conviction of a misdemeanor involving moral turpitude" is ambiguous. It might mean conviction of a misdemeanor whose elements constitute moral turpitude or a misdemeanor that by the manner of its commission involves moral turpitude. The latter is the correct reading.

A similar reading was given the provisions of former Code of Civil Procedure section 287, subdivision 1, which, like the section at issue, predicated discipline upon "conviction of a felony or misdemeanor involving moral turpitude . . . ."[2] In *In re Hatch* (1937) 10 Cal.2d 147 [73 P.2d 885], Hatch's suspension as an attorney was predicated upon conviction under the Corporate Securities Act. He claimed his violations were without moral turpitude. The Supreme Court conceded that certain violations of the Corporate Securities Act may fall into the class of "doubtful cases where the determination as to whether moral turpitude was involved may fall on one or the other side of the line, depending upon the circumstances of the particular case." (*Id.* at p. 150.) It decided that this was a case "involving moral turpitude" and it looked to the records of the conviction, including the charges and the restrictions imposed during the period of probation.

*Castro, supra,* did not concern a statute·the effect of which turns upon events outside of the adjudicated elements of the offense. It concerned impeachment for a prior felony conviction. The lead opinion ruled that when such a conviction is offered for impeachment of a witness in a criminal trial, it "should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (38 Cal.3d at pp. 316-317.) It did so for "reasons of auxiliary policy—avoidance of unfair surprise and confusion of issues—which generally prohibit impeachment of a witness with extrinsic proof of particular acts of misconduct . . . ." (*Id.* at p. 316.) That rationale is inapplicable in a disciplinary proceeding predicated upon conviction of a misdemeanor involving moral turpitude. The nature of the conviction is central, rather than collateral, to the proceeding, and notice must be afforded the employee before the matter is tried.

More analogous is *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150], which concerned a statute, similar to that at issue, which imposed an enhanced sentence for the prior conviction of a burglary

---

[2]Former section 287, subdivision 1 is as follows.

"An attorney and counselor may be removed or suspended by the supreme court, or any department thereof, or by any district court of appeal, or by any superior court of the state, for either of the following causes, arising after his admission to practice:

"1. His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence." (Stats. 1911, ch. 422, p. 848.)

of a residence, a fact not within the least adjudicated elements of the burglary. The court held that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." (*Id.* at p. 345.)

"To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement for 'burglary of a residence'—a term that refers to *conduct*, not a specific *crime*. To allow the trier to look to the record of conviction—*but no further*—is also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (44 Cal.3d at p. 355.)

*Hatch, supra*, suggests that where the record of conviction is not sufficient to determine the question of moral turpitude the court may refer the matter to the State Bar for an inquiry and recommendation. (10 Cal.2d at p. 151.) More importantly, the court determined there was no need for a reference because the records of conviction, including the specific charges and restrictions imposed during the period of probation, were "persuasive that the motive and intent with which [Hatch] acted was such as to indicate turpitude in the commission of the offenses of which he was convicted." (*Id.* at pp. 152-153.)

These precedents impel the view that section 19572, subdivision (k) permits the Board to look beyond the least adjudicated elements of the misdemeanor offense to determine whether it involved moral turpitude. Its purpose is to permit disciplinary action to protect members of the public from acts of misconduct by public employees in the course of their employment. The perceived threat of recidivism is based upon the fact of criminal conduct involving moral turpitude which results in a conviction. Such a threat is not diminished by the consideration that others could violate the same criminal statute without moral turpitude. It is inconsistent with the section's purpose to assign a meaning which bars the Board from consideration of the record of the conviction.

In this case Padilla pled guilty to the offense of battery as set forth in an amended complaint which specified the means by which the battery was accomplished, to wit, that Padilla "did willfully unlawfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of [his daughter], a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of [Padilla and the] child."

## II

Because the Board's decision facially discloses that sentence was "withheld," i.e., imposition of sentence was suspended and defendant was placed on probation, we asked the parties whether the judgment should be upheld, regardless of the reasoning of the trial court (see, e.g., 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259), on the ground that Padilla did not suffer a "conviction" within the meaning of section 19572, subdivision (k). The parties predictably take contrary positions.

As related, section 19572, subdivision (k), provides that an employee may be disciplined for "conviction of a misdemeanor involving moral turpitude. . . . A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to . . . any offense involving moral turpitude is deemed to be a conviction within the meaning of this section." The question is: what is a "conviction" which *follows* a plea of nolo contendere when an ordinary plea of guilty without more constitutes a conviction.

The term "conviction" has been used in two different contexts, as constituting an adjudication of guilt and as constituting a final judgment of conviction from which an appeal may be taken. (See, e.g., *People* v. *Banks* (1959) 53 Cal.2d 370, 390-391 [1 Cal.Rptr. 669, 348 P.2d 102]; *McKannay* v. *Horton* (1907) 151 Cal. 711, 716 [91 P. 598].) In the statutes which address the civil consequences of a conviction the latter sense has been used. (See *Truchon* v. *Toomey* (1953) 116 Cal.App.2d 736, 745 [254 P.2d 638, 36 A.L.R.2d 1230], right to vote; cf. *Stephens* v. *Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182]; *Banks, supra,* at p. 391.)

The second sentence of section 19572, subdivision (k), tracks this dichotomy; a conviction on a plea or verdict of guilty signifies the adjudication of guilt and a "conviction *following* a plea of nolo contendere" refers to the judgment of the court from which an appeal may be taken.

The distinction is attributable to the significance given a plea of nolo contendere at the time the second sentence was added to subdivision (k) by amendment in 1963. (Compare Stats. 1963, ch. 1620, § 2, p. 3213 with Stats. 1961, ch. 293, § 3, p. 1325.) At that time the plea of nolo contendere was not recognized under California law.[3] But the question of the effect of the plea entered in another jurisdiction upon a collateral proceeding in California had arisen. In *Caminetti* v. *Imperial Mut. L. Ins. Co.* (1943) 59 Cal.App.2d 476 [139 P.2d 681] the court held that, "[a]ssuming that a judgment and sentence

---

[3]The plea of nolo contendere was first recognized in California criminal law under a later chaptered amendment to Penal Code section 1016 in the same year. (Stats. 1963, ch. 2128, p. 4418.)

pronounced following the entry of a plea of *nolo contendere* constitutes a 'conviction,'" it could not be used to revoke a certificate of authority under the Insurance Code because of the contemporaneous limitations on the use of such a plea as an admission. (*Id.* at pp. 489-491; also see generally *In re Hallinan* (1954) 43 Cal.2d 243 [272 P.2d 768].) The inclusion of a "conviction following a plea of nolo contendere" in the definition of conviction in section 19572, subdivision (k), appears directed at overcoming the *Caminetti* holding.

Padilla's argument turns on the significance given an order of probation for purposes of an appeal. Under Penal Code section 1237, subdivision (1), as enacted in 1872, a defendant was permitted to appeal "[f]rom a final judgment of conviction." Under this provision some orders of probation were not appealable. *In re Phillips* (1941) 17 Cal.2d 55, 58 [109 P.2d 344, 132 A.L.R. 644], illustrates the situation and its consequence:[4]

"The power of the trial court to grant probation after a conviction may be exercised in either of two ways: the court may suspend the imposition of the sentence, in which case no judgment of conviction is rendered, or it may impose the sentence and thereafter suspend its execution. (Pen. Code, secs. 1203.1, 1203.2.) In the latter case a judgment of conviction has been rendered from which an appeal can be taken, and upon affirmance, it becomes a final judgment. In the former situation, however, where the court suspends the imposition of the sentence, that is, the rendition of a judgment of conviction, there is no judgment from which the defendant can prosecute an appeal [Citations], and thus there can be no final judgment of conviction. It has been suggested that this places power in the hands of the trial court to control disbarment orders because the power of this court to enter an order of disbarment under the statute is made to depend upon whether the order of probation suspends the imposition of the judgment or merely its execution. In a sense this is true, but it is merely the result of the statutory scheme, for only in the one case is there a final determination of the defendant's guilt upon which this court can act in making its order of automatic disbarment. Where the trial court suspends the rendition of its judgment, this court acting under section 6102 (*supra*) can only suspend and cannot disbar the attorney, for there has been no final adjudication of his guilt in a court of law."

The court found this reasoning inapplicable because the trial court had rendered a judgment which was affirmed on appeal:

"The judgment of conviction in this case was 'final' in the sense that it was no longer possible to contest the guilt of the defendant upon the merits

---

[4]Padilla points to two cases of a similar stripe, *In re Rosencrantz* (1931) 211 Cal. 749 [297 P. 15] and *Suspension of Hickman* (1941) 18 Cal.2d 71 [113 P.2d 1]. They are answered by the reasoning addressed to *In re Phillips* provided in the text.

of the case. It was therefore a 'final judgment of conviction' sufficient to sustain an order of disbarment by this court under section 6102." (17 Cal.2d at p. 59.)

Justice Spence wrote a concurring opinion calling the attention of the Legislature to the anomaly in the statutes relating to probation. He offered the following observation.

"An application for probation is directed to the matter of punishment and not to the matter of guilt. If there is a serious question regarding the sufficiency of the evidence to establish the guilt of the defendant or a serious question regarding the fairness of the trial in which he was found guilty, it would seem appropriate that a defendant should not be deprived of his right of appeal by applying for probation and by the granting thereof without the imposition of sentence. It appears that trial courts ordinarily have no occasion to consider the distinction between the two procedures permitted in granting probation and that it might be deemed good policy by the legislature to provide by statute that any order placing a defendant upon probation under either procedure should be deemed a 'judgment of conviction' for purposes of appeal and for the purposes of section 6102 of the Business and Professions Code." (*In re Phillips*, 17 Cal.2d at pp. 64-65, conc. opn. of Spence, J.)

Eventually, in Statutes 1951, chapter 1674, the step proposed by Justice Spence was taken; Penal Code section 1237 was amended to provide that *every* order granting probation "shall be deemed to be a final judgment within the meaning of this section." The final judgment to which the 1951 amendment refers is deemed "a final judgment of conviction." This amendment seriously undercut the logic of the case law which distinguished between the two modes of granting probation for purposes of the classification of the action as a judgment of conviction.

If anything remains of the distinction beyond the sterility of the forms of the law ruling from the grave, it must find substance in the significance given the action of the trial court in selecting between the two modes of probation. Justice Spence suggested that from the perspective of the trial court there is no significant difference. This comports with our own understanding of trial court behavior.

It might be contended that there is a formality in the imposition of sentence that has some peculiar significance to the adjudication of guilt as regards a plea of nolo contendere. Penal Code section 689 suggests that there can be no conviction without some variety of adjudication.

"No person can be convicted of a public offense unless by verdict of a jury, accepted and recorded by the court, by a finding of the court in a case where a jury has been waived, or by a plea of guilty." (Pen. Code, § 689.)

We discern no difference between the two modes of probation in this regard. Perhaps most telling, is the amendment of Penal Code section 1016 in 1975 (Stats. 1975, ch. 687, p. 1635) which added the second sentence of subdivision 3. Penal Code section 1016, with the language of the 1975 addition italicized, is as follows:

"There are six kinds of pleas to an indictment or an information, or to a complaint charging an offense triable in any inferior court:

". . . . . . . . . . . . . . . . . . . . . . . .

3. Nolo contendere, subject to the approval of the court. *The court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty.* The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (Pen. Code, § 1016, subd. 3.)

In the aggregate, these evolutionary changes in the background law erased the difference between the two modes of probation for purposes of constituting a conviction. "Where the reason is the same, the rule should be the same." (Civ. Code, § 3511.) Under current law an order granting probation upon a plea of nolo contendere is a "conviction following a plea of nolo contendere" within the meaning of section 19572, subdivision (k), regardless whether sentence is imposed or not. For that reason the section is applicable to the plaintiff's case.

The judgment is reversed. Appellants shall recover costs on appeal.

Sparks, J., and Scotland, J., concurred.