Filed 2/18/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROLF BISHOP, Plaintiff and Appellant, v. SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION, Defendant and Respondent. | D085406 (Super. Ct. No. 37-2024-00007394-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Loren G. Freestone, Judge. Affirmed.

Landay Roberts, John K. Landay and Waddy Stephenson for Plaintiff and Appellant.

Brant C. Will and Christina M. Milligan for Defendant and Respondent.

I

INTRODUCTION

Rolf Bishop, a former employee of the County of San Diego, pleaded guilty to a felony charge of violating a state conflict-of-interest law. After the entry of Bishop's plea, but before his criminal sentencing, the San Diego

County Employees Retirement Association (SDCERA) notified him that he had forfeited a portion of his accrued pension benefits under Government Code section 7522.74 on the basis that he had been "convicted" of a job-related felony.[1]  Thereafter, the court overseeing Bishop's criminal case reduced his offense to a misdemeanor under Penal Code section 17, subdivision (b)(3), and Bishop requested reinstatement of his forfeited pension benefits.  SDCERA denied the reinstatement request and Bishop petitioned the trial court for a writ of administrative mandate seeking to set aside SDCERA's decision.  The court denied Bishop's writ petition and entered judgment for SDCERA.

Bishop appeals, arguing he is entitled to the reinstatement of his forfeited pension benefits because the crime to which he pleaded guilty was reduced to a misdemeanor at sentencing.  Bishop's appeal requires us to determine whether a public employee suffers a "conviction" within the meaning of section 7522.74 when the employee is adjudicated as guilty of a crime, whether by plea or jury verdict, or, alternatively, whether the employee suffers a "conviction" only when there has been both an adjudication of guilt *and* entry of a judgment thereon.  In *Estrada v. Public Employees' Retirement System* (2023) 95 Cal.App.5th 870 (*Estrada*), our colleagues in the Second District Court of Appeal determined that an adjudication of guilt constitutes a "conviction" for purposes of a felony-forfeiture provision that is substantively identical to section 7522.74.  We agree with the *Estrada* court's conclusion.  We also agree with the *Estrada* court's holding that a public employee's pension benefits remain forfeited

---

[1]     Further undesignated statutory references are to the Government Code.

2

irrespective of whether the employee's job-related felony conviction is reduced to a misdemeanor conviction under Penal Code section 17, subdivision (b).

Because Bishop pleaded guilty to a job-related felony, we conclude he was "convicted" of a job-related felony within the meaning of section 7522.74. His forfeited pension benefits remained forfeited, notwithstanding the criminal court's reduction of the felony charge to a misdemeanor charge under Penal Code section 17, subdivision (b)(3). Therefore, we affirm the judgment in favor of SDCERA.

## II

## BACKGROUND

Bishop worked as an employee of the County of San Diego for seven and a half years until his employment was terminated on November 3, 2020.

On December 17, 2021, the San Diego County District Attorney's Office filed a felony complaint against Bishop charging him with one felony count of willfully violating section 1090, a state conflict-of-interest statute that prohibits public officers and employees from having a financial interest in any contract made by them in their official capacity, or by any body or board of which they are members. Willful violations of section 1090 are wobblers, which are punishable as either felonies or misdemeanors. (§ 1097, subd. (a).)

On May 20, 2022, Bishop pleaded guilty to the felony violation of section 1090. On Bishop's change of plea form, he initialed next to a statement that he entered the plea freely and voluntarily.

On August 17, 2022, SDCERA notified Bishop that it had determined he had suffered a felony "conviction" arising out of or in the performance of his official duties. Therefore, under section 7522.74, SDCERA concluded that Bishop forfeited his accrued pension benefits from the earliest date of his commission of a felony (March 1, 2017) until the date of his separation

3

(November 3, 2020). As we will discuss, section 7522.74 states that a public employee who is "convicted" of a job-related felony "shall forfeit" a portion of the employee's pension benefits. (§ 7522.74, subd. (b)(1).) There is no indication in the appellate record that Bishop appealed this initial forfeiture determination.[2]

On March 8, 2023, at Bishop's criminal sentencing hearing, the court overseeing Bishop's criminal case placed Bishop on summary probation for a period of one year, subject to various conditions. Over the objection of the prosecution, the court also reduced the charge from a felony to a misdemeanor under Penal Code section 17, subdivision (b)(3).

On March 14, 2023, Bishop contacted SDCERA and requested reinstatement of his forfeited pension benefits due to the reduction of his charge to a misdemeanor. SDCERA denied the request. Bishop administratively appealed the denial to SDCERA's chief executive officer and its Board of Retirement, and both appeals were denied.

Thereafter, Bishop filed a petition for writ of administrative mandate asking the trial court to direct SDCERA to set aside its decision denying his request to reinstate his forfeited pension benefits. After briefing and a hearing, the court denied Bishop's petition. It found that section 7522.74 precluded the reinstatement of Bishop's forfeited pension benefits. Bishop timely appealed the ensuing judgment in favor of SDCERA.

III

DISCUSSION

Bishop challenges the denial of his request to reinstate his forfeited pension benefits. Although he pleaded guilty to a felony violation of a state

---

[2]     As a result of the forfeiture determination, SDCERA returned about $16,000 in overpayment contributions to Bishop.

4

law, he claims his guilty plea to the felony charge did not constitute a felony "conviction" for purposes of section 7522.74, the felony-forfeiture provision. Instead, Bishop argues, the nature of his conviction could not be determined until his criminal sentencing, when the court placed him on summary probation and reduced his charge to a misdemeanor. According to Bishop, SDCERA never should have determined that he had forfeited a portion of his accrued pension benefits because he was never "convicted" of a felony within the meaning of section 7522.74.

SDCERA contends Bishop was "convicted" of a felony for purposes of section 7522.74 on the date he entered his guilty plea, thereby triggering the forfeiture of his pension benefits. Although the criminal court reduced the charge to a misdemeanor during Bishop's sentencing hearing pursuant to Penal Code section 17, subdivision (b)(3), SDCERA argues Bishop's pension funds were subject to forfeiture because he stood "convicted" of a felony at the time SDCERA made its forfeiture determination, and Penal Code section 17, subdivision (b)(3), does not operate retroactively.

For reasons we shall explain, we agree with SDCERA.

A. *Standard of Review*

"Code of Civil Procedure section 1094.5 governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. If the administrative decision substantially affects a fundamental vested right, such as the right to employee retirement benefits, the trial court must exercise its independent judgment on the evidence. [Citation.] Under this standard, the 'trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the

5

evidence.' [Citation.] In cases where the trial court exercised its independent judgment on the evidence, the appellate court generally reviews the trial court's factual findings for substantial evidence." (*Estrada, supra*, 95 Cal.App.5th at p. 881.)

"The proper interpretation of a statute, however, presents a question of law that is subject to de novo review. [Citation.] The rules governing statutory interpretation are well settled. ' "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Estrada, supra*, 95 Cal.App.5th at p. 882.)

B. *Section 7522.74*

Section 7522.74, the felony-forfeiture provision at issue in this appeal, was enacted as part of the California Public Employees' Pension Reform Act of 2013 (§ 7522 et seq.; PEPRA), which went into effect January 1, 2013.

"[T]he catalyst for [PEPRA] was dire financial predictions necessitating urgent and fundamental changes to improve the solvency of various pension systems." (*Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, 705.) PEPRA "amended virtually all state employee retirement systems to begin addressing the state's

6

enormous unfunded pension liability and returning these systems to actuarially sound footing." (*McGlynn v. State of California* (2018) 21 Cal.App.5th 548, 551; see *Cal Fire Local 2881 v. Cal. Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, 122 [the Legislature "intended to strengthen the state's public pension system and ensure its ongoing solvency" when it enacted PEPRA].)

In furtherance of these goals, the Legislature included provisions within PEPRA that were designed to curb or prevent pension system abuses. (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1052; *Estrada, supra*, 95 Cal.App.5th at p. 884 [PEPRA "was enacted to close loopholes and to curb abusive practices that existed in California's public pension system."].) Relevant here, PEPRA enacted sections 7522.72 and 7522.74, which mandate the partial forfeiture of a public employee's pension benefits if the employee is convicted of a job-related felony. (*Wilmot v. Contra Costa County Employees' Retirement Assn.* (2021) 60 Cal.App.5th 631, 662 ["By enacting section 7522.72, the Legislative moved to close an egregious loophole that allowed public funds to reward criminality."].) Both provisions are identical in substance. Section 7522.72 applies to "a public employee first employed by a public employer ... before January 1, 2013," (§ 7522.72, subd. (a)), and section 7522.74 applies to "a public employee first employed by a public employer .... on or after January 1, 2013," (§ 7522.74, subd. (a)). Because Bishop was first employed by the County of San Diego after January 1, 2013, our focus is on section 7522.74.

Section 7522.74, subdivision (b)(1) sets forth the general rule mandating the partial forfeiture of a public employee's pension benefits when the employee suffers a conviction for a job-related felony. It provides, "If a

7

public employee is *convicted* by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, he or she shall forfeit all accrued rights and benefits in any public retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the *conviction*."  (Italics added.)

Section 7522.74, subdivision (c) identifies the pension benefits that are subject to forfeiture when an employee suffers a job-related conviction, and clarifies that such pension benefits remain forfeited notwithstanding any reduction in the employee's sentence or expungement of the conviction.  In relevant part, it provides, "A member shall forfeit all the rights and benefits earned or accrued from the earliest date of the commission of any felony described in subdivision (b) to the forfeiture date, inclusive.  The rights and benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the member's conviction. Rights and benefits attributable to service performed prior to the date of the first commission of the felony for which the member was convicted shall not be forfeited as a result of this section."

Section 7522.74, subdivision (h) provides, "If a public employee's conviction is reversed and that decision is final, the employee shall be entitled to do either of the following: [¶] (1) Recover the forfeited rights and benefits .... [¶] (2) Redeposit those contributions and interest that would have accrued during the forfeiture period, as determined by the system actuary, and then recover the full amount of the forfeited rights and benefits."

8

C. *SDCERA Correctly Denied Bishop's Reinstatement Request*

To determine whether SDCERA properly denied Bishop's request to reinstate his forfeited pension benefits, we must resolve two questions. First, we must determine whether a public employee suffers a "conviction" within the meaning of section 7522.74 at the time the employee is adjudicated guilty of a felony, whether by plea or jury verdict, or whether a "conviction" requires both an adjudication of guilt *and* entry of a judgment thereon. If we conclude that the answer to the first question is that a public employee suffers a felony "conviction" when the employee is adjudicated guilty, we must then decide what effect, if any, to give to the criminal court's reduction of Bishop's felony to a misdemeanor under Penal Code section 17, subdivision (b)(3).

i. *The Meanings of "Convicted" and "Conviction" in Section 7522.74*

As noted, section 7522.74, subdivision (b)(1), provides, "If a public employee is *convicted* by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, he or she shall forfeit all accrued rights and benefits in any public retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the *conviction*." (Italics added.)

As the Supreme Court has explained, "the terms 'convicted' and 'conviction' are ambiguous and susceptible of different meanings depending on context." (*People v. Park* (2013) 56 Cal.4th 782, 799 (*Park*).) In its " 'primary' " and " 'ordinary' " usage, the term "convicted" refers to an adjudication of guilt through the return of a jury verdict or the entry of a plea admitting guilt. (*People v. Davis* (2010) 185 Cal.App.4th 998, 1001 (*Davis*),

9

citing 4 Blackstone's Commentaries 262; see *People v. Banks* (1959) 53 Cal.2d 380, 390–391 [" 'A plea of guilty constitutes a conviction.' "], superseded by statute on other grounds as stated in *Park*, at pp. 791–793; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1253 ["The ordinary legal meaning of 'conviction' is a verdict of guilty or the confession of the defendant in open court, and not the sentence or judgment."].) However, courts sometimes deviate from the ordinary usage of these terms where, as here, a civil penalty or disability flows from the conviction. In those cases, courts have held that a person is "convicted" of a crime only when a judgment is entered upon an adjudication of guilt. (See *Boyll v. State Personnel Bd.* (1983) 146 Cal.App.3d 1070, 1073–1076; *Helena Rubenstein International v. Younger* (1977) 71 Cal.App.3d 406, 418–421; *Truchon v. Toomey* (1953) 116 Cal.App.2d 736, 744–745.)

*Estrada* is the only published decision that has addressed which of these meanings the Legislature intended when it used the terms "convicted" and "conviction" in PEPRA's felony-forfeiture provisions. In *Estrada*, a public employee pleaded no contest to a job-related felony, which was then reduced to a misdemeanor under Penal Code section 17, subdivision (b). (*Estrada, supra,* 95 Cal.App.5th at pp. 877–878.) An administrative determination was subsequently made that the employee had forfeited a portion of her accrued pension benefits under section 7522.72. (*Id.* at p. 879.) The trial court denied the employee's petition for writ of mandate seeking to set aside the forfeiture determination, and the Court of Appeal affirmed. (*Id.* at p. 880.)

Relevant here, the *Estrada* court concluded that the employee stood convicted of a felony when she pleaded guilty to the felony charge. The *Estrada* court observed that PEPRA's felony-forfeiture provision does not define the statutory terms "convicted" or "conviction," but "the general rule in California is that ' "[a] plea of guilty constitutes a conviction." ' [Citation.] 'A

10

guilty plea admits every element of the crime charged" [citation] and "is the 'legal equivalent' of a 'verdict' [citation] and is 'tantamount' to a 'finding' [citations]." ' [Citation.] [¶] The same principles apply to a plea of nolo contendere or no contest." (*Estrada, supra*, 95 Cal.App.5th at pp. 882–883.) Therefore, the *Estrada* court held, the employee was convicted of a job-related felony when she pleaded no contest to the felony charge. (*Id.* at p. 885.)

The *Estrada* court also reasoned that its construction of the terms "convicted" and "conviction" was "consistent with the legislative purpose" of PEPRA. (*Estrada, supra*, 95 Cal.App.5th at pp. 884.) The *Estrada* court observed that the felony-forfeiture provisions were enacted " 'to protect the public employee pension system from abusive practices ... and to preserve public trust in government by discouraging serious criminal activity abusive of the public trust.' " (*Id.* at p. 884.) According to the *Estrada* court, its interpretation of "convicted" and "conviction" furthered these important goals by providing for the forfeiture of ill-gotten pension benefits at the earliest opportunity, as soon as it has been ascertained that " 'felonious conduct [has been] committed in the scope of [the] pensioner's public employment ....'" (*Id.* at p. 884.) We agree with the *Estrada* court's determination that PEPRA's purpose suggests that the Legislature intended "convicted" and "conviction" to mean an adjudication of guilt, not the entry of judgment upon an adjudication of guilt. (*Biedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804 ["our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose' "]; see *People ex rel. Lungren v. Superior Court*

11

(1996) 14 Cal.4th 294, 313 ["civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"].)

As we have noted, courts—considering constitutional provisions and statutes outside the context of PEPRA—sometimes invoke "an exception" to the ordinary usage of the terms "convicted" and "conviction," when a civil penalty or disability flows from a conviction. (*Davis, supra*, 185 Cal.App.4th at p. 1001.) However, those decisions do not set forth a hard-and-fast rule that applies to all statutes in all circumstances. Indeed, when the application of traditional canons of statutory interpretation suggests the terms should receive their ordinary meanings, decisions involving the imposition of civil penalties and disabilities have construed the terms "convicted" and "conviction" as we do here today—to mean an adjudication of guilt. (See *Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885, 892–893, 894–895 (*Danser*) [construing felony-forfeiture provision governing judges, and concluding that a judge found guilty of a felony suffered a final conviction despite the court's suspended imposition of sentence and dismissal of criminal charges under Penal Code section 1203.4]; *Padilla v. State Personnel Bd.* (1992) 8 Cal.App.4th 1136, 1142, 1145 [interpreting statute governing discipline of state employees for misdemeanor convictions involving moral turpitude, and concluding that "an ordinary plea of guilty without more constitutes a conviction," and "an order granting probation upon a plea of nolo contendere is a 'conviction following a plea of nolo contendere' ... regardless whether sentence is imposed or not"]; accord *Meyer v. Board of Medical Examiners* (1949) 34 Cal.2d 62, 66 [order suspending

12

physician's license based on his "conviction" of offense involving moral turpitude "stem[med] from the adjudication of guilt"].)

Under the circumstances, we—like the *Estrada* court—believe the primary and ordinary definitions of "convicted" and "conviction" apply to those terms for purposes of PEPRA's felony-forfeiture provisions. As discussed, PEPRA's general purpose of protecting the public employee pension system and curbing abusive practices supports such a construction. So too does section 7522.74, subdivision (c). That provision states, "The rights and benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the member's conviction." In our view, the manifest purpose of this provision is to ensure that the pension benefits of a public employee who has been found to have abused the public trust and perpetrated felonious job-related misconduct are subject to forfeiture notwithstanding any act of judicial leniency a criminal court may extend to the employee. Our construction of the terms "convicted" and "conviction" promotes this legislative goal by ensuring the forfeiture of the employee's pension benefits once there has been an adjudication that the employee engaged in felonious conduct in violation of the public trust, regardless of whether a court enters a judgment on the adjudication.

We have reviewed the legislative histories of the bills that enacted and amended the felony-forfeiture provisions, and we were unable to uncover anything in them that might shed light on the meanings of "convicted" and "conviction," as those terms are used in section 7522.74.[3] However, the subsequent legislative history of Assembly Bill No. 1067, which added section

---

[3]    Section 7522.74 was enacted into law by Assembly Bill No. 340 (Stats. 2012, ch. 296, § 15), and amended by Senate Bill No. 13 (Stats. 2013, ch. 528, § 14) and Assembly Bill No. 2476 (Stats. 2014, ch. 238, § 4).

13

7522.76 to PEPRA, effective January 1, 2026, is far more illuminating. (See *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244 ["the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them"]; *Cal. Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 504, fn. 10 ["Subsequent legislation cannot change the meaning of an earlier enactment, but it may supply an indication of the intent behind the original legislation that may be considered."]; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 589, fn. 13 ["We may properly rely on the legislative history of subsequent enactments to clarify the Legislature's intent regarding an earlier enacted statute."].)

Broadly speaking, section 7522.76 bolsters PEPRA's felony-forfeiture provisions by requiring a public employer to continue an ongoing investigation of a public employee suspected of job-related misconduct even after the employee retires, and to refer the matter to the appropriate law enforcement agency if the investigation indicates the employee may have committed a crime. (§ 7522.76, subds. (a), (b).) Section 7522.76 also cross-references PEPRA's felony-forfeiture provisions, and expressly states that a public employee "convicted of a felony" for job-related misconduct forfeits his

14

or her pension benefits pursuant to the relevant felony-forfeiture provisions, "effective on the date of the conviction."[4]  (*Id.*, subd. (b).)

The Legislature enacted section 7522.76 after the *Estrada* court concluded that a "conviction" refers to an adjudication of guilt, rather than a judgment entered upon an adjudication of guilt.  Thus, at the very least, we must presume the Legislature was aware of existing laws, including *Estrada*, when it chose to strengthen PEPRA's felony-forfeiture provisions, and when it reiterated that an employee "convicted of a felony" for job-related misconduct forfeits the employee's pension benefits, "effective on the date of the conviction," (§ 7522.76, subd. (b)), pursuant to the law's felony-forfeiture provisions.  (See *Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 ["This court has long recognized the principle of statutory construction that '(w)hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the

_____

[4]     Section 7522.76, subdivision (a), states, "If a public employee, as defined in subdivision (h) of Section 7522.04, retires while under investigation by a public employer for misconduct arising out of or in the performance of the public employee's official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, the public employer shall continue the investigation even after the employee retires if the public employer's investigation indicates that the public employee may have committed a crime."

Section 7522.76, subdivision (b), then provides, "If the public employer's investigation indicates that a public employee may have committed a crime, the public employer shall refer the matter to the appropriate law enforcement agency and the public employer may then close the investigation.  If the public employee is convicted of a felony for any conduct described in subdivision (a), the public employee shall forfeit all accrued rights and benefits in any public retirement system in which the employee is a member in accordance with Section 7522.70, 7522.72, or 7522.74, as applicable, effective on the date of the conviction."

15

identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation.' "]; see also *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 335 ["The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute"]; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199 ["we must assume that, when enacting section 1016.5, the Legislature was aware of existing related laws and intended to maintain a consistent body of rules"].)

Even more revealing, the legislative history of section 7522.76 includes three legislative documents—an Assembly Committee on Public Employment and Retirement report and two separate Assembly Floor analyses—which all clearly state that a "conviction" refers to an adjudication of guilt for purposes of PEPRA's felony-forfeiture provisions. Each legislative report or analysis describes the felony-forfeiture provisions and how they operate, and then states, "The conviction date is the date in which a plea of guilty is entered, or when the judge or jury makes a decision on the case." (Assem. Com. on Public Employment and Retirement, Rep. on Assem. Bill No. 1067 (2025–2026 Reg. Sess.) as introduced Feb. 20, 2025, p. 3; Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 1067 (2025–2026 Reg. Sess.), as amended May 23, 2025, p. 1; Concurrence in Sen. Amendments, Rep. on Assem. Bill No. 1067 (2025–2026 Reg. Sess.) as amended July 15, 2025, p. 1.)

Given these legislative reports, it seems apparent that the Legislature intended "convicted" and "conviction" to refer to an adjudication of guilt for purposes of section 7522.76, which amends PEPRA to strengthen its felony-forfeiture provisions and expressly states that a public employee who has been "convicted" of job-related misconduct is subject to PEPRA's felony-forfeiture provisions. Our construction of section 7522.74 harmonizes section

16

7522.74 with section 7522.76, by ensuring that both related provisions use the term "conviction" to mean an adjudication of guilt. If we were to conclude that a "conviction" instead requires a judgment entered *after* an adjudication of guilt for purposes of section 7522.74, an intolerable conflict would arise between sections 7522.74 and 7522.76, with an adjudication of guilt constituting a "conviction" under section 7522.76 and a judgment upon an adjudication of guilt constituting a "conviction" under section 7522.74. We decline to create such an irreconcilable conflict between these related provisions. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible"]; *N.S. v. D.M.* (2018) 21 Cal.App.5th 1040, 1051 ["the words of a statute must be construed in context and statutory provisions relating to the same subject should be harmonized, both internally and with each other"].)

For all these reasons, we adhere to the *Estrada* court's conclusion that a public employee suffers a "conviction" for a job-related felony under section 7522.74 when the employee is adjudicated as guilty, either by jury verdict or a plea admitting guilt. Here, Bishop pleaded guilty to a felony violation of section 1090 on May 20, 2022. Bishop therefore stood convicted of a job-related felony on May 20, 2022, and SDCERA properly determined that his pension benefits were subject to partial forfeiture under section 7522.74.

    ii.    *The Reduction Under Penal Code Section 17*

We turn now to the question of whether the criminal court's reduction of Bishop's felony to a misdemeanor under Penal Code section 17, subdivision (b)(3), required SDCERA to reinstate Bishop's previously forfeited pension benefits. We conclude it did not.

17

In his criminal case, Bishop pleaded guilty to a felony charge of willfully violating section 1090. In relevant part, section 1090, subdivision (a) states, "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

A willful violation of section 1090 "is punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the state prison, and is forever disqualified from holding any office in this state." (§ 1097, subd. (a).) "This type of offense, which is punishable as either a felony or a misdemeanor, is commonly referred to as a 'wobbler.' " (*Estrada, supra*, 95 Cal.App.5th at p. 883.) As noted, SDCERA found Bishop forfeited his pension benefits based on his plea to the felony violation of section 1090.

Thereafter, the criminal court placed Bishop on probation and reduced his charge to a misdemeanor under Penal Code section 17, subdivision (b)(3), which states, "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] … (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." Generally, it is proper to treat a wobbler as a misdemeanor under Penal Code section 17 if " 'the rehabilitation of the convicted defendant either does not require, or would be

18

adversely affected by, incarceration in a state prison as a felon.' " (*Park, supra*, 56 Cal.4th at p. 789, fn. 4.)

"When the court properly has exercised its discretion to reduce a wobbler to a misdemeanor under the procedures set forth in [Penal Code] section 17(b), the statute generally has been construed in accordance with its plain language to mean that the offense is a misdemeanor 'for all purposes.' " (*Park, supra*, 56 Cal.4th at p. 793.) "The provisions of [Penal Code] section 17(b) are not necessarily conclusive, however, and the Legislature sometimes has explicitly made clear its intent to treat a wobbler as a felony for specified purposes notwithstanding a court's exercise of discretion to reduce the offense to a misdemeanor." (*Id.* at p. 794.) Thus, "when a wobbler is reduced to a misdemeanor in accordance with the statutory procedures, the offense thereafter is deemed a 'misdemeanor for all purposes,' except when the Legislature has specifically directed otherwise." (*Id.* at p. 795.)

In *Estrada*, after the court concluded that the employee suffered a "conviction" when she pleaded no contest to a job-related felony, it then determined that her conviction remained a felony conviction for purposes of PEPRA's felony-forfeiture provision notwithstanding the fact she had obtained a reduction of her felony conviction under Penal Code section 17. (*Estrada, supra*, 95 Cal.App.5th at pp. 885–889.) The court reached this conclusion even though the employee had obtained a reduction of her conviction *before* there was an administrative determination that her pension benefits were forfeited. The *Estrada* court reasoned that the Legislature "intended for a felony conviction that is later reduced to a misdemeanor in a postconviction proceeding to be treated as a felony for purposes of determining the forfeiture of a convicted employee's retirement benefits," as demonstrated by the statute's directive that forfeited pension benefits " 'shall

19

remain forfeited notwithstanding any reduction in sentence … following the date of the member's conviction.' " (*Id.* at p. 886; see also *Danser, supra*, 240 Cal.App.4th at pp. 893–894 [judge's pension benefits remained forfeited under section 75526 based on verdict finding judge guilty of felony, notwithstanding court's reduction of his felony conviction to a misdemeanor conviction under section 17, subdivision (b)(3)].) We agree.

Our conclusion is bolstered by the fact that section 7522.74 identifies only one circumstance in which an employee's forfeited pension benefits may be returned to the employee. Subdivision (h) provides for the return of forfeited pension benefits only if the "employee's conviction is reversed and that decision is final." (§ 7522.74, subd. (h).) Because the Legislature identified just one basis for an employee's forfeited pension benefits to be returned to the employee—a *reversal* of the employee's conviction—canons of statutory interpretation dictate that we should infer the Legislature intended forfeited pension benefits to remain forfeited in *other* circumstances, such as when a conviction is reduced under Penal Code section 17, subdivision (b). (See *People v. Guzman* (2005) 35 Cal.4th 577, 588 ["Under governing principles of statutory construction, 'the expression of one thing in a statute ordinarily implies the exclusion of other things.' "]; *Spicer v. City of Camarillo* (2011) 195 Cal.App.4th 1423, 1427 ["a statute may express the law by 'negative implication' "].) Here, Bishop's conviction was not reversed in a decision that became final. Therefore, he was not entitled to a return of the pension benefits under section 7522.74, subdivision (h).

Case law on the prospective-only effect of Penal Code section 17, subdivision (b), also supports our determination that the criminal court's reduction of Bishop's conviction did not trigger a return of his forfeited pension benefits. For example, in *Park*, a criminal defendant pleaded guilty

20

to assault with a deadly weapon, a wobbler charged as a felony, and the trial court suspended imposition of sentence, imposed probation, and, after the defendant's completion of probation, reduced the charge to a misdemeanor under Penal Code section 17, subdivision (b)(3). (*Park, supra*, 56 Cal.4th at p. 787.) The defendant was later found guilty of attempted manslaughter and another crime in a separate proceeding. (*Id*. at p. 788.) The question presented to the Supreme Court was whether the defendant could be subject to a five-year sentencing enhancement in the manslaughter case for having suffered a prior serious felony conviction based on his prior conviction for assault with a deadly weapon (see Pen. Code, § 667, subd. (a)).

The *Park* court answered this question in the negative, concluding the reduction of the prior conviction rendered it a misdemeanor for all purposes, and the Legislature did not express an intention to override Penal Code section 17 in the prior serious felony enhancement statute. (*Park, supra*, 56 Cal.4th at pp. 795–799.) However, the court opined that the "defendant would [have] be[en] subject to the [prior serious felony] enhancement had he committed and been convicted of the present crimes *before* the court reduced the earlier offense to a misdemeanor." (*Id*. at p. 802, italics added; see also *People v. Feyrer* (2010) 48 Cal.4th 426, 439 (*Feyrer*) ["If ultimately a misdemeanor sentence is imposed, the offense is a misdemeanor *from that point on, but not retroactively*"], italics added, superseded by statute on other grounds as stated in *Park,* at pp. 791–793; *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 823 (*Coffey*) ["reduction of [a] charge under [Penal Code] section 17 renders it a misdemeanor for all purposes *thereafter*, without any retroactive effect"].) Here, SDCERA found Bishop's pension benefits were subject to forfeiture *before* the criminal court reduced his crime to a

misdemeanor. Under *Park* and its progeny, the reduction of Bishop's conviction did not operate retroactively to undo or nullify this determination.

Bishop relies on two cases, *People v. Trausch* (1995) 36 Cal.App.4th 1239, (*Trausch*), and *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968 (*Alvarez*), to argue that the nature of his conviction could not be determined until the criminal court reduced his crime to a misdemeanor. In *Trausch*, a defendant pleaded guilty to a wobbler and admitted four prior strikes, and his wobbler was reduced to a misdemeanor at sentencing. (*Trausch*, at p. 1242.) On appeal, the issue presented was whether the Three Strikes law (Pen. Code, § 667, subds. (b)–(i)) curtailed the sentencing court's discretion to reduce the wobbler to a misdemeanor under Penal Code section 17, subdivision (b). (*Trausch*, at pp. 1245–1247.) The *Trausch* court determined the Three Strikes law did not limit the sentencing court's authority, even though it requires the court to commit to prison any defendant who " 'has been convicted of a felony' " and has suffered one or more prior strikes. (*Id.* at p. 1245, quoting § 667, subd. (c).) The *Trausch* court observed that Penal Code section 17 "leaves the determination of the nature of the conviction to the discretion of the judge to be determined at sentencing." (*Id.* at p. 1246, italics omitted.) *Alvarez* addressed the same issue as *Trausch* and reached the same conclusion. (*Alvarez*, at pp. 974–980.)

These decisions do not persuade us to part ways with *Estrada*. Both decisions analyzed "whether a guilty plea or verdict constitutes a 'conviction' for purposes of section 667, subdivision (c)," the Three Strikes law—not PEPRA's felony-forfeiture provisions. They also analyzed the meaning of this Three Strikes law language within the context of deciding "whether a sentencing judge could be precluded from exercising his discretion to reduce [a] charge to a misdemeanor, with the consequence that the defendant could

22

be confined in state prison for the rest of his life." (*Coffey, supra*, 129 Cal.App.4th at p. 819.)  Here, the civil forfeiture of pension benefits for a job-related felony conviction "neither deprives the judge of his sentencing discretion nor condemns the defendant to lifetime incarceration."  (See *Coffey*, at p. 819 [defendant is convicted of felony within the meaning of DNA Data Base Act when he pleads guilty to a wobbler charged as a felony].)  Thus, *Trausch* and *Alvarez*—which addressed the meaning of a different statute under starkly different circumstances—do not convince us that SDCERA erred when it denied Bishop's request for reinstatement of his forfeited pension benefits.

In sum, we conclude Bishop was convicted of a job-related felony as of May 20, 2022, the date he pleaded guilty to the felony conflict-of-interest charge.  (See *Estrada, supra*, 95 Cal.App.5th at pp. 882–883.)  He remained convicted of a felony on August 17, 2022, the date SDCERA notified him that he had forfeited a portion of his accrued pension benefits under section 7522.74.  Although Bishop *later* obtained a prospective reduction of his conviction under Penal Code section 17, subdivision (b)(3), the reduction had no retroactive effect on the forfeiture.  (See *Feyrer, supra*, 48 Cal.4th at pp. 438–439; *Coffey, supra*, 129 Cal.App.4th at p. 823.)  Thus, SDCERA properly denied Bishop's request to reinstate his previously forfeited pension benefits.

## IV

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


McCONNELL, P. J.

I CONCUR:


O'ROURKE, J.

BUCHANAN, J., Dissenting.

I believe *Estrada v. Public Employees' Retirement System* (2023) 95 Cal.App.5th 870 (*Estrada*) was wrongly decided and should not be followed. In my view, a public employee has not been "convicted" of a felony requiring pension forfeiture under Government Code section 7522.74 if they pled guilty to a wobbler offense that was charged as a felony but then determined to be a misdemeanor at sentencing. (Pen. Code, § 17, subd. (b)(3).) In reaching a contrary result, *Estrada* created a conflict with longstanding California case law holding that a person has not been "convicted" of a felony for purposes of a provision imposing such a civil penalty unless there has been both a guilty plea or verdict *and* a felony judgment. The *Estrada* court overlooked this line of authority, misconstrued the statutory language, and failed to apply pertinent principles of statutory construction.[1]

## I

Government Code section 7522.74, subdivision (b) requires partial forfeiture of a public pension when a public employee has been "convicted" of a felony for conduct arising out of or in the performance of their official duties. Subdivision (c)(1) states: "A member shall forfeit all the rights and benefits accrued from the earliest date of the commission of a felony described in subdivision (b) to the forfeiture date, inclusive. The rights and benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction *following the date of the member's conviction.*" (Italics added.)

The statute contains no definition of the terms "convicted" or "conviction." As the California Supreme Court has recognized, however,

---

[1] It is worth noting that *Estrada* was litigated by a pro per appellant who filed no petition for review in the California Supreme Court.

these terms "are ambiguous and susceptible of different meanings depending on context." (*People v. Park* (2013) 56 Cal.4th 782, 799 (*Park*).) In some contexts, they are used to signify a guilty verdict or guilty plea, and in others, they refer to both the guilty verdict or guilty plea *and* the judgment pronounced thereon.[2] (*Id.* at pp. 799–800 [citing *People v. Shirley* (1993) 18 Cal.App.4th 40, 46 and *People v. Rhoads* (1990) 221 Cal.App.3d 56, 60].) For simplicity, I will refer to the former as the "adjudication definition" and the latter as the "judgment definition."

In adopting the adjudication definition for pension forfeiture under the Government Code, the *Estrada* court did not even acknowledge the existence of any alternative meaning. Without explanation, the court merely applied cases employing the adjudication definition in certain criminal law contexts. (*Estrada, supra*, 95 Cal.App.5th at pp. 882–883 [citing cases].) *Estrada* made no mention of the fact that California courts have repeatedly found the terms "convicted" and "conviction" to be ambiguous, nor did it acknowledge or discuss the cases in which California courts have adopted the alternative judgment definition of these terms.

As demonstrated in the next section, *Estrada* relied on the wrong line of authorities and overlooked relevant case law in adopting the adjudication definition for this specific context.

---

[2]    In a criminal case, the final judgment is synonymous with the sentence. (*People v. Chamizo* (2019) 32 Cal.App.5th 696, 699–700.) For purposes of the judgment definition of a conviction, the final judgment may include an order granting probation with a suspended sentence or a stayed execution of sentence. (*Padilla v. State Personnel Bd.* (1992) 8 Cal.App.4th 1136, 1142–1145 (*Padilla*).)

2

II

Until *Estrada*, California courts applied the judgment definition of a conviction in the context of statutory and constitutional provisions that impose civil consequences for a criminal conviction without otherwise defining the term.

In *Truchon v. Toomey* (1953) 116 Cal.App.2d 736 (*Truchon*), the court applied the judgment definition to a constitutional provision disenfranchising those "convicted" of a felony (former Cal. Const., art. II, § 1). The court acknowledged that "the word 'conviction' has been used with varying meanings." (*Truchon*, at p. 740.) After considering authorities from other jurisdictions, the court concluded "that for the imposition of the disability of disfranchisement the word must be interpreted in its broad sense of verdict, or plea, of guilty, *followed by judgment and sentence*." (*Id*. at p. 742, italics added.) The court explained that because "the imposition of a serious disability is being considered, the philosophy of the broad interpretation must necessarily be applied." (*Id*. at p. 744.)

In *Helena Rubenstein International v. Younger* (1977) 71 Cal.App.3d 406 (*Helena*), the court similarly applied the judgment definition to a constitutional provision disqualifying those "convicted" of certain crimes from holding public office (former Cal. Const., art. XX, § 11). The court noted: "[T]he term 'conviction' has historically had, and continues to have, at least two accepted meanings: (1) the jury verdict, and (2) the judgment following the verdict." (*Helena*, at p. 413.) After an extensive survey of case law from California and other jurisdictions (*id*. at pp. 414–418), the court concluded: "[T]he terms 'convicted' and 'conviction' have not had a fixed single meaning in California law. *In the context of statutes or constitutional provisions imposing civil penalties or disabilities, they have never been construed to*

3

*mean the verdict of guilt.* Such penalties or disabilities have not been found applicable until at least a court judgment has been entered. The California decisions are in this respect in accord with the weight of authority in other jurisdictions." (*Id.* at p. 418, italics added.) The court also noted that the right to hold public office is "a valuable right of citizenship" and "any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility." (*Id.* at p. 418.)

In *Boyll v. State Personnel Board* (1983) 146 Cal.App.3d 1070 (*Boyll*), the court again applied the judgment definition to a Government Code provision disqualifying anyone who had been "convicted" of a felony from employment as a peace officer (Gov. Code, § 1029). The court explained: "As appears in the case law, the terms 'convicted' or 'conviction' do not have a uniform or unambiguous meaning in California. Sometimes they are used in a narrow sense signifying a verdict or guilty plea, some other times they are given a broader scope so as to include both the jury verdict (or guilty plea) *and* the judgment pronounced thereon. [Citations.] However, where, as in the instant case, a civil disability flows as a consequence of the conviction, the majority and better rule is that 'conviction' must include both the guilty verdict (or guilty plea) *and* a judgment entered upon such verdict or plea." (*Boyll*, at pp. 1073–1074.)

The *Boyll* court declined to apply cases using the adjudication definition in certain criminal law contexts. The court found these cases were inapposite because they "relate[d] to the usage of such 'conviction' in a subsequent *criminal* proceeding for enhancement purposes, not to impose collateral civil disabilities of fundamental dimension." (*Boyll, supra,* 146 Cal.App.3d at p. 1076.) "As pointed out earlier, the term 'conviction' has a

4

double meaning. While in a narrow sense it can be equated with a verdict or guilty plea, when it goes to determine the civil consequences the conviction must be interpreted in a broader sense so as to include not only the verdict or guilty plea but also the judgment entered thereon." (*Ibid*.)

Other California courts have also acknowledged this longstanding rule. As the court explained in *Padilla*: "The term 'conviction' has been used in two different contexts, as constituting an adjudication of guilt and as constituting a final judgment of conviction from which an appeal may be taken. [Citations.] *In the statutes which address the civil consequences of a conviction the latter sense has been used*." (*Padilla, supra*, 8 Cal.App.4th at p. 1142, italics added; accord *People v. Martinez* (1998) 62 Cal.App.4th 1454, 1460; see also *People v. Mendoza* (2003) 106 Cal.App.4th 1030, 1033 ["when a civil disability is a consequence of a conviction, the term generally includes the guilty verdict or plea *and* the judgment"].)

Though not cited by the *Estrada* court, these cases are applicable because forfeiture of a public pension under the Government Code is a *civil* consequence of a conviction, not a criminal penalty. (See *Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885, 894 (*Danser*) [describing pension forfeiture under Government Code as a "civil consequence"]; *Wilmot v. Contra Costa County Employees' Retirement Assn.* (2021) 60 Cal.App.5th 631, 670 [finding pension forfeiture under Government Code to be a "remedial civil measure"].) These cases are also applicable because the issue here similarly involves a forfeiture of valuable rights with constitutional implications. (See *Myres v. Board of Administration for Public Employees' Retirement System* (2025) 117 Cal.App.5th 534, 557 (*Myres*) ["the extreme sanction imposed by . . . a forfeiture of vested pension rights . . . implicates constitutional rights"]; *Hipsher v. Los Angeles*

5

*Employees Retirement Assn.* (2020) 58 Cal.App.5th 671, 699–700 (*Hipsher*) [deprivation of public employee's vested pension implicates property right protected by due process].)

Of course, the Legislature is free to reject this default rule and explicitly adopt the adjudication definition or some other variant if it wishes to do so. The majority cites several cases in which the Legislature has done so explicitly in the context of other civil consequences. For example, the statute at issue in *Padilla* authorizes employee discipline for certain convictions and explicitly states: "A plea or verdict of guilty, or a conviction following a plea of nolo contendere . . . *is deemed to be a conviction* within the meaning of this section." (Gov. Code, § 19572, subd. (k), italics added.) Based on the specific language of this statute, the *Padilla* court concluded that the adjudication definition applied to guilty pleas and the judgment definition applied to pleas of nolo contendere. (*Padilla, supra*, 8 Cal.App.4th at p. 1142.)

Likewise, the relevant portion of the statute at issue in *Danser* triggers a forfeiture of pension benefits when a judge "*pleads guilty or no contest or is found guilty of a crime* committed while holding judicial office *that is punishable as a felony* . . . ." (Gov. Code, § 75526, italics added.) Relying on the "punishable as a felony" language, the *Danser* court found that the statute was "not concerned with the actual punishment a judge has received or will receive" and "is only concerned with whether the judge was found guilty of an offense 'punishable' as a felony . . . ." (*Danser, supra*, 240 Cal.App.4th at p. 894.) *Danser* concluded the judge had pled guilty to an offense that was "punishable as a felony" (conspiracy to obstruct justice) and the criminal court's subsequent reduction of the offense to a misdemeanor

6

did not change the fact that he had pled guilty to a crime "punishable as a felony." (*Id*. at pp. 893–894.)[3]

The upshot is that, unless the Legislature specifies otherwise, the judgment definition of the terms "convicted" and "conviction" applies to statutes imposing civil consequences for a criminal conviction.[4]

### III

The Legislature did not specify otherwise when it enacted the PEPRA pension forfeiture provision at issue here in 2012. (Stats. 2012, ch. 296, § 15.) As noted, the statute requires partial forfeiture of a public pension if the public employee is "convicted" of a felony, but it does not define the term "convicted" or "conviction." (Gov. Code, § 7522.74, subd. (b)(1).) The statute contains no language suggesting that the terms "convicted" and "conviction" refer to a guilty plea or verdict *without* the pronouncement of a felony judgment. For example, the statute does not say that a guilty plea is "deemed to be a conviction," like the statute in *Padilla*, nor does it say that forfeiture is triggered by a guilty plea to a crime that is merely "punishable as a felony," like the statute in *Danser*. Because the terms "convicted" and

---

[3] The majority also cites *Meyer v. Board of Medical Examiners* (1949) 34 Cal.2d 62 involving suspension of a physician's license, but *Meyer* did not adopt the adjudication definition of a conviction. On the contrary, it followed the rationale of *In re Phillips* (1941) 17 Cal.2d 55 on attorney disbarment, which required " 'a final judgment of conviction.' " (*Meyer*, at p. 65, quoting *In re Phillips*, at p. 61.) In *Meyer* itself, there was a final judgment of conviction because the appellant had received a suspended sentence of imprisonment. (*Meyer*, at p. 63.)

[4] The majority cites criminal law cases suggesting that the adjudication definition is the "primary" and "ordinary" definition of the term "convicted." Even assuming this is true in the criminal law context, the case law makes clear it is not true when it comes to statutes imposing civil consequences for a criminal conviction. (*Boyll, supra*, 146 Cal.App.3d at pp. 1074, 1076.)

7

"conviction" are not otherwise defined in the statute, the usual rule for the civil consequences of a criminal conviction applies: these terms "must be interpreted in a broader sense so as to include not only the verdict or guilty plea but also the judgment entered thereon." (*Boyll, supra,* 146 Cal.App.3d at p. 1076.)

Following *Estrada*'s lead, the majority nevertheless concludes that subdivision (c)(1) of Government Code section 7522.74 requires forfeiture when a public official pleads guilty to a wobbler charged as a felony, but the trial court determines it to be a misdemeanor at sentencing under Penal Code section 17, subdivision (b)(3). By its terms, however, subdivision (c)(1) only says that once forfeited, pension rights shall remain forfeited notwithstanding any subsequent "reduction in sentence" or expungement of the conviction "following the date of the member's *conviction*." (Italics added.) This provision itself uses the word "conviction" without defining it. And here, as in *Estrada*, there was neither a reduction in sentence nor an expungement. At the *initial* sentencing, the court elected to treat the offense as a misdemeanor and granted probation. By doing so, the trial court did not reduce the *sentence*, it reduced the *offense* from its "provisional" designation as a felony (*Park, supra,* 56 Cal.4th at p. 800) to a misdemeanor *before* imposing any sentence. (See *People v. Statum* (2002) 28 Cal.4th 682, 688–689 [reduction of wobbler to misdemeanor at sentencing constitutes a reduction to

8

lesser offense].) A *sentence* cannot be reduced unless one has already been imposed.[5]

If anything, the language of Government Code section 7522.74, subdivision (c)(1) suggests that the Legislature intended the judgment definition of a conviction to apply, not the adjudication definition. Because a sentence must be imposed before it can be reduced, the statutory phrase "reduction in sentence . . . following the date of the member's conviction" is most reasonably construed to mean that the term "conviction" includes the initial sentence, i.e., the judgment. Rather than departing from existing case law on the civil consequences of a criminal conviction, this interpretation embraces it.

IV

Other principles of statutory interpretation reinforce the same result. Of particular significance, "[t]he law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906.) This rule has been firmly established since the early days of statehood. (*People ex rel. Davidson v. Perry* (1889) 79 Cal. 105, 112.) Moreover, it applies even when the forfeiture statute serves an important and remedial public purpose. (*People v. $10,153.38 in United States Currency* (2009) 179 Cal.App.4th 1520, 1525–1526 [strictly construing statute requiring forfeiture of property upon conviction of drug offense " 'notwithstanding the strong governmental

_____

[5]     It would be a different question if the trial court had granted felony probation with a suspended prison sentence at the initial sentencing but then later reduced the offense to a misdemeanor and imposed a lesser sentence. (See Pen. Code, § 17, subd. (b)(3) [allowing court to declare offense a misdemeanor "at the time of granting probation, or on application of the defendant or probation officer thereafter"].) We need not decide this or any other hypothetical scenario not before us.

interest in stemming illegal drug transactions' "]; *Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 917 [strictly construing property forfeiture statute even though it was "intended to be 'remedial by removing the tools and profits from those engaged in the illicit drug trade' "].)

We must also construe ambiguous or uncertain laws governing public employee pensions liberally in favor of the pensioner. (*Hale v. Public Employees' Retirement System* (2022) 82 Cal.App.5th 764, 772.) This includes ambiguous provisions on pension forfeiture. (*Myres, supra*, 117 Cal.App.5th at pp. 551, 558.) Because the terms "convicted" and "conviction" are ambiguous and can reasonably be construed to require a final judgment (*Park, supra*, 56 Cal.4th at pp. 799–800), we must resolve the ambiguity in favor of the pensioner. Likewise, to the extent the statutory term "reduction in sentence . . . following the date of the member's conviction" (Gov. Code, § 7522.74, subd. (c)(1)) may be viewed as ambiguous, any such ambiguity must be resolved in favor of the pensioner as well.

We further presume the Legislature was aware of existing law and intended to maintain a consistent body of rules when it enacted these pension forfeiture provisions. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199.) When the Legislature enacted these provisions as part of the California Public Employees' Pension Reform Act (PEPRA; Stats. 2012, ch. 296, § 15), *Truchon* and *Helena* and *Boyll* were already on the books. These cases firmly established the principle that in applying provisions governing the civil consequences of a conviction, unless the term is otherwise defined, "the conviction must be interpreted in a broader sense so as to include not only the verdict or guilty plea but also the judgment entered thereon." (*Boyll, supra*, 146 Cal.App.3d at p. 1076.) These cases also involved similar provisions requiring forfeiture of important rights upon

conviction, including the right to hold public office. (*Helena, supra*, 71 Cal.App.3d at pp. 413–418.) We ordinarily presume the Legislature intended the same meaning to apply to related laws with identical or substantially similar language. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785; *In re Marriage of D.H. & B.G.* (2023) 87 Cal.App.5th 586, 597.)

V

The majority relies on comments made in several 2025 legislative committee reports discussing the recent enactment of Government Code section 7522.76, which became effective January 1, 2026. The majority concludes from the discussion of pre-existing law in these committee reports that the Legislature intended the words "convicted" and "conviction" to refer to the adjudication definition for both the newly enacted provision and the pre-existing provisions.

In my view, this is not an appropriate use of subsequent legislative history to ascertain the meaning of the PEPRA forfeiture provisions enacted by a prior Legislature 13 years earlier. A subsequent legislative committee's belief as to the meaning of a provision enacted by an earlier Legislature "cannot dictate the proper construction" of the provision's original meaning. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 689–690 (*Coker*).) " '[P]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation' because 'by definition [it] "could have had no effect on the [Legislature's] vote." ' " (*Id.* at p. 690; see also *Reno v. Bossier Parish Sch. Bd.* (1997) 520 U.S. 471, 484–485 [" 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one' "]; *In re JA.O.* (2025) 18 Cal.5th 271, 282–283 [" 'there is little logic and some incongruity in the notion that one Legislature

11

may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies' "].)

"[W]hatever the Legislature may have believed" in 2025 about the meaning of the PEPRA pension forfeiture provisions enacted in 2012, " 'the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts.' " (*Coker, supra*, 62 Cal.4th at pp. 689, 690 [declining to consider 2010 Legislature's belief as to scope of provision enacted by 1989 Legislature].) "[T]he 'Legislature has no authority to interpret a statute. . . . The Legislature may define the meaning of statutory language by a present legislative enactment which, subject to constitutional restraints, it may deem retroactive. But it has no legislative authority simply to say what it *did* mean.' " (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473.)

As the majority acknowledges, the relevant 2012 legislative history does not shed any light on the Legislature's intent in using the terms "conviction" and "convicted."[6] Ultimately, we must determine the intent of the 2012 Legislature. The 2025 legislative committee reports are immaterial to this inquiry.

## VI

Finally, adopting the judgment definition comports with the evident intent of the Legislature in enacting the PEPRA pension forfeiture laws. The "twin purposes are to protect the public employee pension system from abusive practices by incentivizing careers of faithful public service, and to preserve public trust in government by discouraging *serious criminal activity*

---

[6] "Given PEPRA's breadth, it is unsurprising that its legislative history fails to detail the purpose or intended scope of the relatively narrow provision at issue here." (*Myres, supra*, 117 Cal.App.5th at p. 545.)

12

abusive of the public trust." (*Hipsher, supra*, 58 Cal.App.5th at p. 695, italics added.) Consistent with these goals, Government Code section 7522.74 only applies to "job-related *felonious* conduct." (*Hipsher*, at p. 696, italics added.) The Legislature plainly decided not to require forfeiture of a public pension for less serious misdemeanor convictions.

As the Supreme Court has recognized, wobblers are "a special class of crimes involving conduct that varies widely in its level of seriousness." (*Park, supra*, 56 Cal.4th at p. 789; accord *People v. Superior Court* (*Mitchell*) (2024) 17 Cal.5th 228, 242.) For this "sui generis" category of crimes, the Penal Code " 'specifically leaves the determination of the nature of the conviction to the discretion of the judge to be determined *at sentencing.*' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 975.) After a guilty plea to a wobbler and before sentencing, the defendant's status as a felon "is only provisional." (*Park*, at p. 800.) It is ultimately for the sentencing court to assess the severity of the specific conduct at issue and other relevant factors and decide whether the offense is a felony or misdemeanor. (See *Alvarez*, at p. 978.)

Nothing suggests the Legislature intended to mandate the extreme sanction of pension forfeiture for a mere provisional status that is not ultimately confirmed by the final judgment. Given the Legislature's own distinction between felonies and misdemeanors in the pension forfeiture laws, we would honor its intent by declining to impose this civil penalty against someone whose wobbler offense the court has determined to be a misdemeanor at sentencing.

VII

Applying the judgment definition, appellant was not "convicted" of a felony within the meaning of Government Code section 7522.74 because the

13

criminal court never imposed a felony judgment against him.  The court designated the offense as a misdemeanor at the initial sentencing, and thus the only judgment ever imposed was for a misdemeanor.  Accordingly, the pension forfeiture provisions of the Government Code do not apply.
I therefore dissent.


BUCHANAN, J.